UNITED STATES of America, Appellee,

v.

Edward James MATZKER, Appellant.

No. 72–1300.

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 9, 1973.

Decided Feb. 14, 1973.

Rehearing Denied March 6, 1973.

David J. Fingerhut, St. Louis, Mo., for appellant.

Terry L. Adelman, Asst. U. S. Atty., St. Louis, Mo., for appellee.

Before MATTHES, Chief Judge, BRIGHT, Circuit Judge, and TALBOT SMITH, Senior District Judge.*

MATTHES, Chief Judge.

Appellant Matzker brings this direct appeal from a judgment of conviction, entered upon a jury verdict, of unlawfully possessing three gasoline credit cards stolen from the United States mail knowing they were stolen. For this violation of 18 U.S.C. § 1708 appellant was sentenced to imprisonment for three years.

There are three elements of this crime which the prosecution must prove beyond a reasonable doubt: (1) that the credit cards were stolen from the mails; (2) that the defendant wilfully possessed those cards contrary to law; and (3) that while possessing them the defendant knew they were stolen [though not necessarily that he knew they were stolen from the mails, United States v. Hines, 256 F.2d 561, 563 (2nd Cir. 1958)]. Appellant in his trial testimony tacitly conceded that he possessed the cards while knowing they were stolen.[1] Accordingly, the only merito-

---

* Eastern District of Michigan, sitting by designation.

1. Appellant in his brief attacks the propriety of the court's instruction that possession of recently stolen property infers the possessor knows the property is stolen. Appellant asserts his possession in July of cards allegedly mailed in January is not sufficiently recent to warrant this instruction. However, appellant made no objection at trial to this instruction, see Transcript p. 128, and thus is precluded from objecting now. Rule 30, Fed.R.Crim.P.; Terlikowski v. United

rious issue on appeal is whether the Government introduced evidence from which the jury could find that the cards had been stolen from the mails.[2] In resolving that issue we view the evidence in the light most favorable to the verdict. Glasser v. United States, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942); United States v. Hamilton, 452 F.2d 472 (8th Cir. 1971). So considered, we have no difficulty in finding that a submissible case was made on the controverted issue and accordingly we affirm.

The prosecution proved that the cards were stolen from the mails by circumstantial evidence, through several witnesses, the cards themselves, and one other exhibit.

The Government first called Mr. LeRoy Loveland, Assistant Manager for Retail Credit for the issuer of the three cards in question. Mr. Loveland identified the particular markings on each of the three cards as "Series D, cycle 619." He testified this was the issuer's code for cards reissued in January of 1971,[3] and he described the manner in which such cards are reissued as follows. Blank cards are embossed by computer-controlled machines with the cardholders' names and account numbers. The same computer also directs a machine which prints the cardholders' addresses on inner envelopes and prints a computer print-out sheet containing the same information. Employees then stuff the card into the appropriate envelope and

check that card off the print-out sheet to verify this action has been completed. The stuffed inner envelopes are then taken to the mailroom where other employees feed them into another machine which stuffs the addressed inner envelope into an outer, window envelope and seals and posts the outer envelopes. The outer envelopes are then loaded on a company truck and transported to the local post office. This process handles 17,000 cards per day.

Mr. Loveland further testified that no internal verification is made that all inner envelopes are stuffed into outer envelopes, or that they are all loaded on the truck, or that they all are deposited with the postal authorities. The one check for the accuracy of the process is when employees note on the print-out sheet that cards bearing certain names and numbers have been inserted in the appropriate addressed envelopes. Mr. Loveland then identified a print-out sheet of which he is custodian and testified it showed the three cards appellant possessed were stuffed on January 27, 1971, for mailing from Oklahoma to the cardholder, Kamienski Funeral Home, in Passaic, New Jersey. The Government then called James Kamienski, proprietor of the cardholder company, who said he never received the cards.

The Government did not rest its case solely on the testimony of Loveland and Kamienski. Cogent evidence was introduced through the testimony of police officers of the City of St. Louis that ap-

States, 379 F.2d 501, 511 n. 11 (8th Cir.), cert. denied, 389 U.S. 1008, 88 S.Ct. 569, 19 L.Ed.2d 604 (1967). Furthermore, appellant in his trial testimony contended the person from whom he claimed to have received the cards told him (appellant) the cards were stolen from the factory before they were mailed. Transcript pp. 114–15. Thus, even by appellant's version of the facts, he conceded the element to which this instruction is directed, to wit: that appellant knew the cards were stolen.

2. Appellant makes three additional assignments of error: (1) the references in various testimony to the fact that appellant

possessed a total of seventeen credit cards when the trial judge refused to admit into evidence the fourteen not charged; (2) one phrase in the closing argument for the prosecution; and (3) the admission of some rebuttal evidence designed to rehabilitate the credibility of the chief prosecution witness. We have carefully examined these contentions and find none of them to be meritorious.

3. See Transcript pp. 7–8. This evidence precludes appellant's argument in brief that the cards he possessed could have been three of the twelve cards previously issued to this cardholder at various dates during the preceding decade.

pellant possessed at least 17 credit cards, including the three which are the subject of this prosecution, that he sold them to a police officer for $20.00, and that appellant told the officer he was leery of the sale because appellant believed the cards were stolen from the mails. Furthermore, appellant, testifying in his own behalf, corroborated much of the testimony of police officers. Appellant stated more cards could be obtained from one Tommy G., who, appellant testified, informed appellant that "these cards come from the plant where they make them." Appellant also testified he told the officer "I'm not going to touch these cards [because] . . . I'll find myself sitting in jail with them." See Transcript pp. 114–15.

Appellant nevertheless submits that the evidence is insufficient to prove beyond a reasonable doubt that the cards were stolen from the mail. He asserts the cards could have been stolen before they were deposited with postal authorities or after they had been received in Passaic by the funeral home to which they were issued. From this premise appellant argues that the prosecution failed to discharge its burden and thus that it was error to deny his motions for acquittal. We disagree.

While it may be theoretically possible that the cards were stolen from the plant before mailing or from the funeral home after receipt, the prosecution need not affirmatively disprove every conceivable alternative theory. United States v. Mooney, 417 F.2d 936, 938 (8th Cir. 1969), cert. denied, 397 U.S. 1029, 90 S.Ct. 1280, 25 L.Ed.2d 541 (1970); United States v. Zimple, 318 F.2d 676, 680 (7th Cir.), cert. denied, 375 U.S. 868, 84 S.Ct. 128, 11 L.Ed.2d 95 (1963). Where, as here, a letter containing a credit card was properly mailed and never received by the addressee but the card was found in quite improper and misusing hands it can be found that the card had been stolen from the mails in the absence of any other explanation being proffered. The jury need not grasp for improbable explanations, but may make common-sense inferences from the proven facts in both civil and criminal cases. See United States v. Hines, supra, 256 F.2d at 562. Since here the uncontroverted evidence clearly shows the addressee never received the card, and shows the card turned up in improper hands, the only arguable point is the sufficiency of the evidence proving the card was mailed. We think that evidence was sufficient.

Mr. Loveland described the office practice for mailing such credit cards and identified a business record which affirmed the cards appellant possessed were embossed and stuffed for mailing. Any further testimony by employees charged with subsequent ministerial tasks in the mailing process would have been cumulative because, considering the volume of cards mailed, those employees could not be expected to recall processing these precise cards but could only affirm Loveland's description of the office procedure and avow they invariably follow it. Cf. Leasing Associates, Inc. v. Slaughter & Son, Inc., 450 F.2d 174 (8th Cir. 1971). Accordingly, Mr. Loveland's testimony and exhibit constitute sufficient evidence from which a jury could conclude beyond a reasonable doubt that the cards appellant possessed were deposited into the United States mail. Compare Webb v. United States, 347 F.2d 363 (10th Cir. 1965); Whiteside v. United States, 346 F.2d 500 (8th Cir. 1965), cert. denied, 384 U.S. 1023, 86 S.Ct. 1946, 16 L.Ed.2d 1025 (1966).

In sum, consideration of all of the facts and circumstances convinces us beyond doubt that there was sufficient evidence from which the jury could find, as it manifestly did, that the three cards which are the subject of this prosecution had been stolen from the mails.

Affirmed.