Michael Louis BUNN, Appellant,

v.

UNITED STATES of America, Appellee.

No. 76–1087.

United States Court of Appeals,
Eighth Circuit.

Submitted May 10, 1976.

Decided June 7, 1976.

R. Earl Barrett, Des Moines, Iowa, for appellant.

George H. Perry, Asst. U. S. Atty., Des Moines, Iowa, Allen L. Donielson, U. S. Atty., James R. Rosenbaum, First Asst. U. S. Atty., for appellee; William D. Scherle, Asst. U. S. Atty., Des Moines, Iowa, on brief.

Before BRIGHT, STEPHENSON, and WEBSTER, Circuit Judges.

BRIGHT, Circuit Judge.

Michael Louis Bunn appeals his conviction by a jury of possessing stolen mail matter, in violation of 18 U.S.C. § 1708. He contends that the evidence was insufficient to sustain the conviction and that the trial court erred in instructing the jury. We reject these contentions and affirm the conviction.[1]

## I. *Sufficiency of Evidence.*

The evidence shows that Bunn possessed a check for $243, representing Aid to Dependent Children (ADC) payments which the Iowa Department of Social Services had addressed and mailed to payee Sharon Haugh at Post Office Box 51, Prole, Iowa. This postoffice box was rented by John Mann, Sharon's father. The evidence disclosed that several members of the John Mann family received their mail addressed to Box 51, including John Mann; his wife; a young daughter, Susan, age 18; his married daughter, Sharon Haugh, who was then temporarily separated from her husband; another daughter, Mrs. Michael Bunn, and her husband, the accused, Mi-chael Bunn. These persons all resided at the Mann household in Prole, Iowa. According to the household custom, any member who visited the box picked up all of the mail and deposited it on top of the television set in the Mann home. Pursuant to this practice, Sharon had authorized others in the Mann home to pick up her mail and bring it into the Mann home.

The Government's case established that the check in question had been mailed to Sharon on September 11, 1974. She did not receive that check. On September 16, 1974, one Jane E. Bos cashed the check in question at the Hinky Dinky supermarket in Des Moines, forging Sharon Haugh's name as an endorsement on the check. Ms. Bos testified that she cashed the check at appellant-Bunn's request and turned the proceeds over to him. She said that Bunn gave her Sharon Haugh's ADC identification card and birth certificate to use for identification purposes, if necessary, in cashing the check. The Government also introduced evidence that the check bore Bunn's fingerprint and that law enforcement officers found Mrs. Haugh's birth certificate in Bunn's personal automobile.

Appellant, testifying in his own behalf, denied any involvement in the sequence of events related by Ms. Bos.

On appeal, Bunn focuses upon the Government's failure to present evidence that he or anyone else actually stole the ADC check *from the mailbox.* Bunn argues that a reasonable probability existed that he took the check from atop the television set. Thus, Bunn concludes, the Government failed to establish beyond a reasonable doubt an essential element of the crime—that the check actually had been stolen from the mails. *See United States v. Matzker,* 473 F.2d 408, 409 (8th Cir. 1973); *United States v. Hines,* 256 F.2d 561 (2d Cir. 1958).

The evidence otherwise disclosed that Sharon Haugh's husband owed Michael Bunn about $200, and the existence of that

---

1. The district court (Chief Judge William C. Hanson) placed Bunn on probation for three years.

indebtedness had provoked some arguments between Michael Bunn and Mr. and Mrs. Haugh in about July of 1974. With this background, we examine appellant's contention in light of inferences which a jury could draw from the evidence.

In the ordinary case where a stranger to the addressee of a mailed check possesses and cashes it, that evidence, together with proof of proper mailing and evidence of nonreceipt by the addressee, is sufficient for a jury to draw the inference that the check had been stolen from the mails. *United States v. Hines, supra,* 256 F.2d at 564; *accord, United States v. Tompkins,* 487 F.2d 146 (8th Cir. 1973), *cert. denied,* 416 U.S. 944, 94 S.Ct. 1952, 40 L.Ed.2d 296, 1974; *United States v. Matzker, supra,* 473 F.2d at 409; *Whitehorn v. United States,* 380 F.2d 909 (8th Cir. 1967).

But here, as appellant aptly notes, Bunn's access to mail left on the television set, as well as in the mailbox, gives rise to alternative inferences—that the check in question was stolen either from the mailbox or from the Mann home. Thus appellant forcefully argues that merely by showing his possession of the stolen check, the Government failed to prove beyond a reasonable doubt that the check had in fact been stolen from the mail.

Appellant's argument overlooks additional evidence in the record on which the jury could rely in deciding whether the check was taken from the postoffice box or from the top of the television set at home. Sharon, the payee of the ADC check, had applied for public assistance in July of 1974, because she was temporarily separated from her husband, had no money, and her parents could not afford to support her and her two children, ages two and one. She had received only two ADC checks, those for July and August, prior to the theft of the third check in September.

Sharon testified that mail arrived at the postoffice and was distributed to the boxes twice a day at about 9:00 a. m. and 4:30 p. m. She or her father usually picked up the morning mail, but usually appellant-Bunn would stop on his way home from work for the mail delivered in the afternoon. Occasionally the younger sister, Sara, would pick up the mail. Sharon's mother and Susan, appellant's wife, seldom, if ever, did so.

Sharon had picked up her two prior checks at the postoffice. However, she never saw her third check. It was not in the post office on any occasion when she checked. Nor did she ever see it on the top of the television even though she was at home caring for her children during this period and reasonably could be expected to have looked forward to its arrival with some eagerness. This evidence tends to indicate that the check was intercepted at the postoffice and was not removed later from the television.

In addition, there was evidence that appellant-Bunn claimed that Sharon and her husband owed him a debt of $200. Prior to the theft of the check Sharon and Bunn had an argument over this debt. The check was actually cashed by Jane E. Bos. She testified that appellant-Bunn provided her with two pieces of identification, Sharon's ADC card and her birth certificate. Although the ADC card was evidently included in the same envelope with the stolen check, the birth certificate was removed from the desk of Sharon's father. This evidence would support the inference that appellant planned the theft in order to collect the alleged $200 debt.

Finally, although appellant took the stand and denied having ever seen or handled the check, the Government proved that his fingerprint appeared thereon. Also, the Government showed that Sharon's birth certificate had been found in appellant's personal car. Not only did this evidence establish that appellant at one time had possession of the check and the birth certificate, but it also permitted the jury to infer that appellant lied because of a consciousness of guilt.

All of these circumstances, viewed together, permit a reasonable inference that appellant removed the check from the mailbox for the purpose of theft. Therefore, appellant's contention that his conviction

resulted from insufficient evidence is without merit.

## II. *Instructions.*

Appellant objects to the following portion of the trial court's charge to the jury:

If you should find beyond a reasonable doubt from the evidence offered and introduced that at the very time of the removal of the mail from the receptacle, if it were so removed, that the individual gathering the mail then and there intended to steal, take and carry away the same, and either the taker or another thereafter was found in possession of the mail, it would then establish the proposition of stolen mail; and the defendant, if all other propositions are proven beyond a reasonable doubt in this case, could be convicted of the charge made in this Indictment.

Appellant's objection to this instruction is similar to his argument on the sufficiency issue. He asserts that "no relevant evi-

dence existed from which the jury could find or infer that the defendant possessed the intent to steal the letter containing the check when it was removed from P. O. Box 51, nor does relevant evidence exist that the defendant removed the mail from P. O. Box 51 on the occasion in question."

██ Our discussion of the sufficiency issue demonstrates that this contention must be rejected. The testimony at trial raised the precise issue of whether the check was one stolen from the mail or stolen after termination of the course of mailing. The court's instruction, taken as a whole, fairly instructed on that issue.[2]

Finding no error, we affirm the conviction.[3]

**2.** The instruction given by the trial court reads as follows:

Members of the jury, you are told that the charge in this case has heretofore been defined for you as a charge against the defendant of unlawful possession of stolen mail, knowing the same to have been stolen. Evidence has been received in this case that the mail receptacle from which mail ultimately came into the hands of the addressee was used in common by a number of recipients. Evidence has also been received in this case that mail was taken from the receptacle by a number of the addressees who used the receptacle.

If you should find beyond a reasonable doubt from the evidence offered and introduced that at the very time of the removal of the mail from the receptacle, if it were so removed, that the individual gathering the mail then and there intended to steal, take and carry away the same, and either the taker or another thereafter was found in possession of the mail, it would then establish the proposition of stolen mail; and the defendant, if all other propositions are proven beyond a reasonable doubt in this case, could be convicted of the charge made in this Indictment.

However, and in the event that the person removing the mail from the receptacle took it into his possession and thereafter formulated the intent to keep the check and convert it to

his own use, then he would be guilty of propositions relating to the charge of embezzlement which is not the charge made in this Indictment; and if you should so find that this is true, then and in that event, you must acquit the defendant.

Therefore, as an essential element of the offense, you must find that the check was stolen from the mails. You are not allowed to convict the defendant if the check was embezzled from the mails.

"To embezzle" means willfully to take, or convert to one's own use, the property of another, which came into the wrongdoer's possession lawfully.

"Stolen" means acquired, or possessed, as a result of some wrongful or dishonest act or taking, whereby a person willfully obtains or retains possession of property which belongs to another, without or beyond any permission given, and with the intent to deprive the owner of the benefit of ownership.

You must remember that the defendant can be convicted only if the check was "stolen." If the check was "embezzled," he must be acquitted of the charges against him.

**3.** We think it well to note that the problems presented in this case would likely not have arisen in a prosecution under 18 U.S.C. § 1702, rather than under § 1708 as in this case. *Cf. Maxwell v. United States,* 235 F.2d 930 (8th Cir. 1956).