# SOUTHERN PACIFIC COMPANY *v.* UNITED STATES.

## APPEAL FROM THE COURT OF CLAIMS.

No. 202.　Submitted March 11, 1915.—Decided April 12, 1915.

Where a railroad company transports property and troops of the United States over a continuous line of railroad part of which is free-haul and the remaining part is pay line, the character of the shipment fixes the rate and the Government can be charged a proportionate part of the through rate only, and not the local rate on that part of the haul which is over the pay line.

A provision in a railroad land grant statute that the government shall always have the right to ship over the line at fair and reasonable rates not to exceed those paid by private parties entitles the Government

to the benefit of the long haul rate and to pay the proportionate part of the rate and not be charged the local rate over the pay line.
48 Ct. Cl. 227, affirmed.

THE facts, which involve questions relating to the amount which the United States can be charged for transportation over a land grant railway, are stated in the opinion.

*Mr. A. A. Hoehling, Jr.,* for appellant.

*Mr. Assistant Attorney General Thompson* for the United States.

MR. CHIEF JUSTICE WHITE delivered the opinion of the court.

The appellant, the Southern Pacific Company, operates under a lease a line of road from San Francisco, via Roseville Junction, to Portland. The line to Roseville Junction, a distance of 108.03 miles, was built as part of the main line extending from San Francisco to Ogden, Utah, by the Central Pacific Railroad Company under an act of Congress of July 1, 1862 (12 Stat. 489). By § 6 of that act the land grants for the construction of the road were made "upon condition that said company . . . shall at all times . . . transport mails, troops, and munitions of war, supplies, and public stores upon said railroad for the Government, whenever required to do so by any department thereof, and that the Government shall at all times have the preference in the use of the same for all the purposes aforesaid (at fair and reasonable rates of compensation, not to exceed the amounts paid by private parties for the same kind of service). . . ."ᴬ

The line from Roseville Junction to Portland, a distance of 663.91 miles, was constructed under the act of

Congress approved July 25, 1866 (14 Stat. 239). Section 5 of that act provided:

"And said railroad shall be and remain a public highway for the use of the Government of the United States, free of all toll or other charges upon the transportation of the property or troops of the United States: And the same shall be transported over said road at the cost, charge, and expense of the corporations or companies owning or operating the same, when so required by the Government of the United States."

Between August, 1897, and March, 1902, the Southern Pacific Company transported for the United States persons and property over said line via Roseville Junction "from points on either side thereof to points on the other side; thus, from San Francisco, Ogden, and other points . . . to Portland via Roseville Junction. The shipments in question did not originate at Roseville Junction nor terminate at Roseville Junction, but were carried through on one continuous transit over both the free haul and the nonfree haul portions of the road precisely as any through shipment is carried for a private shipper." (Finding VI.)

For the services thus rendered the company presented its bills to the accounting officers of the Government in which, while nothing was charged for services rendered over the portion of the road which was free, the local rate was exacted between San Francisco and Roseville Junction. We say the local rate because it is certain that at the times in question the railroad had duly established and published schedules of rates embracing local rates to Roseville Junction as well as through rates to Portland and other points via Roseville Junction, the local rates being higher than the through rates. The accounting officers refused to allow the claims in full insisting that the Government was entitled to the benefit of the through rate. They therefore distributed the through rate over

the whole distance and deducted from the aggregate of the bills the difference between the sum which had been made up by charging the local rate and the sum which would be due charging only the through rate ascertained upon the mileage basis as above stated. The sum remaining due under the operation of this method was received by the railroad company under protest and this suit was commenced in the court below to recover the difference.

Upon the finding of the facts above stated and the legal conclusion that under the statutes the railroad was without right to refuse to allow the through, and charge the local, rate its claim was rejected. 48 Ct. Cls. 227. This appeal was then prosecuted.

There is no controversy concerning the method by which the sum of the applicable through rate was ascertained by the accounting officers of the Government. There are, hence, as stated in the argument of appellant, no disputed facts, and the question for decision is a narrow one since, as further stated in that argument:

"The present appeal presents but a single question of law, and that is as to the legal rate of compensation to which the railroad company is entitled for the transportation of property and troops of the United States over a continuous line of railroad, part of which is free-haul and the remaining part of which is pay line."

The entire theory upon which it is contended that the through shipments could be subjected to a local rate from San Francisco northward to Roseville Junction and southward from Roseville Junction to San Francisco finds clear expression in the argument on behalf of the railroad company as follows:

"While there is a continuous rail line between those two points [San Francisco and Portland] the line itself, from the standpoint of compensation or pay to the railroad company, *breaks* at Roseville Junction; *south* of that point it is 'pay' line; *north* thereof, it is 'free-haul' line; and it

so happens that appellant' company, as lessee, operates *both* lines."

1. But the error of the proposition is manifest as it confounds cause and effect since it assumes the unassumable, that is, that the question of whether traffic is to have the benefit of the lesser through rate or be subjected to the higher local rate is to be determined by the sum of the compensation asked for its carriage instead of by the nature and character of the movement of the traffic, that is, whether it was a through or a local movement. In other words, the proposition is, not that the character of the movement fixes the rate, but that the rate determines the character of the movement. The confusion involved in, and the destructive results which would flow from, the proposition cannot be better illustrated than by considering that the foundation upon which a lesser charge is justified for a through shipment than is exacted for a local shipment is the less cost to the carrier of doing the through business than is incurred in doing the local business. Therefore, to adopt the proposition would require a reversal of the standards by which the character of traffic is fixed. And the terms in which the contention is stated bring out in bold relief the fallacy which it contains, since while it admits "there is a continuous rail line between those two points" (San Francisco and Portland), it yet declares that "the line itself, from the standpoint of compensation or pay to the railway company, *breaks* at Roseville Junction;" that is, not that the continuous physical line of rail over which the through transportation moves is in any way broken, but that by a break (change) in the line of compensation an imaginary break in the physical line itself is to be assumed to the end that a shipment which is inherently through may be converted into one which is essentially local.

2. But apart from the mere question of the abstract error in the proposition relied upon, it is clear that to

accept it would give rise to a plain violation of the provisions of the act of Congress governing the movement of traffic over the road from San Francisco to Roseville Junction, since that act exacts that the Government shall at all times have the right to ship over the road "at fair and reasonable rates of compensation, not to exceed the amounts paid by private parties for the same kind of service." As the findings clearly establish that the schedules filed and published contained a through rate for a shipment from San Francisco to Portland via Roseville Junction, and *vice versa*, it would seem to be indisputable that by the very terms of the act such through rate so published and filed was open and available to the United States for its through shipments. This must be the case unless it can be said that because the United States had acquired an increased advantage concerning the movement of its shipments from Roseville Junction to Portland, therefore it had lost the right to have its through shipments treated as such from San Francisco to Roseville Junction. And it is to be observed that there is no ground for saying that the existence of the right in favor of the United States to a free haul beyond Roseville Junction to Portland subjected the road in hauling from Roseville Junction to San Francisco, or *vice versa*, to a greater cost, since the findings in express terms establish that the freight shipped through by the United States was carried by a continuous movement under exactly similar conditions as was all other through freight carried for private individuals.

*Affirmed.*

MR. JUSTICE McREYNOLDS took no part in the consideration and decision of this case.