## ST. LOUIS, IRON MOUNTAIN & SOUTHERN RAILWAY COMPANY *v.* UNITED STATES.

### APPEAL FROM THE COURT OF CLAIMS.

No. 71. Argued November 12, 1919.—Decided January 5, 1920.

A railroad company which contracted to carry the mail for a compensation fixed by test weighings made after withdrawing empty mail bags, as directed by the Act of May 27, 1908, c. 206, 35 Stat. 412, is not injured by such withdrawal although its purpose was to diminish the pay for mail carriage. P. 205.

Empty mail bags withdrawn from the mails, and which, with other articles of furniture and equipment, are, under the Act of May 27, 1908, *supra*, required to be transmitted by freight or express, are "property of the United States," within the free transportation provisions of the railroad land-grant Acts of February 9, 1853, c. 59, § 4, 10 Stat. 155, and July 28, 1866, c. 300, § 1, 14 Stat. 338. P. 206.

The provision of the land-grant Act of 1853, *supra*, § 6, requiring transportation of the mail over claimant's land-aided road at such price as Congress may by law direct, and that of the Act of July 12, 1876, c. 179, § 13, 19 Stat. 82, fixing the compensation in such cases at 80 per cent. of that generally allowed, do not embrace, as part of the mail, empty mail bags which by the Act of May 27, 1908, are classified with other property of the United States for transportation by freight or express. *Id.*

The Act of June 30, 1882, c. 254, 22 Stat. 120, directing payment on a 50 per cent. basis for army transportation by land-grant railroads, is inapplicable to transportation of empty mail bags. P. 207.

53 Ct. Clms. 45, affirmed.

THE case is stated in the opinion.

*Mr. Benjamin Carter* for appellant:

The railroad companies obtained public lands for the consideration of serving the Government, by transporting its troops and its property. The contents of the mail bags are not property of the United States, and the mail bags, whether loaded with mails, or going back empty for re-loading, are merely appurtenant to the matter carried in them. So, naturally, the loaded bags always had been, and still are, treated as part of the mails and for this reason subject on land-aided railroads to 80 per cent. of the rates of mail pay established, not by the land-grant acts above referred to, but by the Act of July 12, 1876, c. 179, 19 Stat. 78. Inasmuch as every mail bag, while used in the mail service, must sometimes be full and sometimes empty, it would seem to fall reasonably under the operation of this latter act, rather than of the acts which relate to freights and passengers. The acts relating to troops and property have been strictly construed. *United States* v. *Union Pacific R. R. Co.,* 249 U. S. 354; *Alabama Great Southern R. R. Co.* v. *United States,* 49 Ct. Clms. 522; *Chicago, Milwaukee & St. Paul Ry. Co.* v. *United States,* 50 Ct. Clms. 413; *Louisville & Nashville R. R. Co.* v. *United States,* 54 Ct. Clms. 213.

Fifty per cent. rates for freights, the property of the Government, were made generally applicable by the Act of June 30, 1882, c. 254, 22 Stat. 120, and this provision became permanent by codification in the supplement to the Revised Statutes, 1st Supp. Rev. Stats., 376. It seems safe to say that no member of the Congress which enacted that law (knowing that 80 per cent. of full rates was already established by statute for mail service on land-aided routes) believed that, in regard to the carriers' compensation, any element of the mails would ever, by interpretation, be counted as among its subjects.

Did Congress, in providing by the Act of May 27, 1908,
that the empty mail bags should be carried by freight
trains, mean, besides saving a difference between mail
rates and freight rates, to obtain for the bags on land-
aided railroad track a different abatement from full rates
than that which had applied to them when carried in the
mail cars? To say the least, nothing occurred, in the
making of this new law, to indicate any such purpose.
If it was the purpose that the empty bags should go on a
basis of 50 per cent., as against 80 per cent., of full pay
on some lines and should be carried free of charge on
other lines, it is remarkable that no such consideration was
mentioned.

Not merely do the "free-land grant" lines (five in num-
ber) suffer a peculiar hardship from the present practice;
they thus suffer for the first time. The Act of July 12,
1876, was always construed as giving to land-aided lines
uniformly 80 per cent. of the full mail-pay rates. So for
twenty-two years the appellant had received for carrying
the mail bags, full or empty, the same rates that were
paid on those lines to which, as regards passenger and
freight service, 50 per cent. compensation was paid by the
Government. This fact is shown by the reports of the
Postmaster General, judicially known to this court. It
was necessarily known to Congress in 1908. In the ab-
sence of any legislative avowal or suggestion of a purpose
to do so revolutionary a thing, is it not rash to conclude
that Congress finally willed that, while all land-aided
railroads should remain on one footing as regards loaded
mail bags (and their loads) there should be, with respect
to the empty bags, one paid class and one unpaid class of
land-aided railroads? Is it not more reasonable to say
that, in shifting the empty bags from mail-car service to
freight-train service and from statutory mail pay to
freight rates of pay, Congress did not intend to put any
new qualification into the term "rail-road-companies

whose railroad was constructed . . . by a land-grant made by Congress" which it used in the Act of July 12, 1876?

For purposes of compensation, mail bags always, outgoing and incoming and between times, *i. e.,* for repairs, safe-keeping and for proper distribution among the mail routes, are in the hands of the postal authorities. They are never thought of as having any but a mail use.

* The Comptroller of the Treasury (17 Comp. Dec. 900) ruled that shipment of "blue tag" matter by freight trains was lawful provided the amount paid therefor, added to the amount due at mail rates for the weight of matter carried in the mail trains, did not exceed the amount which the Postmaster General was authorized to pay for the total weight of mails carried.

The appellant in accepting a land grant (Act of February 9, 1853), contracted that "compensation" for its mail service should be named provisionally by the Postmaster General, ultimately by Congress. By force of the Act of July 12, 1876, its contract was to carry the mails and to receive 80 per cent. of the statutory rates of compensation. The contract is not carried out if it receives no compensation for carrying the mails; and in applying the law relating to the mails at large the courts would not incline to any interpretation which would have that effect. Is it any more conscionable, when the Act of May 27, 1908, is applied, to say that all compensation should be denied with respect to one essential element of the mails?

If possible, a statute, whatever its terms, will be construed so as to avoid doing a serious injury or producing absurd consequences. Is it not a serious injustice if a railroad company, having contracted to carry the mails for special, reduced rates of compensation, receives no compensation whatever for something that was included in the mails so contracted for and still is inseparable therefrom?

*Mr. Assistant Attorney General Frierson* for the United-States.

MR. JUSTICE DAY delivered the opinion of the court.

This case presents questions arising upon a suit brought by the Railway Company in the Court of Claims to recover compensation for the carriage of mail bags under facts found in the Court of Claims in the record sent up for our consideration. These facts are: That the St. Louis, Iron Mountain & Southern Railway Company, a corporation organized under the laws of the State of Missouri, operated a line of railway between Tower Grove, Missouri, and Texarkana in Arkansas. So much of the railway line as lies between Poplar Bluff, Missouri, and Texarkana, Arkansas, was aided in its construction by a grant of land from the United States by the Act of February 9, 1853, c. 59, 10 Stat. 155, and by the Act of July 28, 1866, c. 300, 14 Stat. 338.

The fourth section of the Act of February 9, 1853, provides:

"The said railroad and branches shall be and remain a public highway for the use of the Government of the United States, free from toll or other charge upon the transportation of any property or troops of the United States."

The first section of the Act of July 28, 1866, with respect to said railway, provides:

"All property and troops of the United States shall at all times be transported over said railroad and branches at the cost, charge, and expense of the company or corporation owning or operating said road and branches respectively, when so required by the government of the United States."

February 4, 1910, the Post Office Department transmitted to the claimant company a distance circular which

relates to mail transportation, the same was duly filled out and certified and returned to the Post Office Department. Between the 17th of February and the 1st day of June, 1910, the Post Office Department made the quadrennial weighing of mail in the weighing division which included the Railway Company's lines. Before this weighing of the mails, Congress passed the Act of May 27, 1908, c. 206, 35 Stat. 412, making appropriations for the Post Office Department, which provides: "The Postmaster-General shall require, when in freightable lots and whenever practicable, the withdrawal from the mails of all postal cards, stamped envelopes, newspaper wrappers, empty mail bags, furniture, equipment, and other supplies for the postal service, except postage stamps, in the respective weighing divisions of the country, immediately preceding the weighing period in said divisions, and thereafter such postal cards, stamped envelopes, newspaper wrappers, empty mail bags, furniture, equipment, and other supplies for the postal service, except postage stamps, shall be transmitted by either freight or express."

Subsequent to the passage of the Act of May 27, 1908, the Post Office Appropriation Acts provided for specific sums for the payment of expressage on postal cards, stamped envelopes, newspaper wrappers and empty mail bags, and they carried similar provisions as to the withdrawal of said articles from the mails preceding weighing periods.

Before the weighing of the mails of the Railway Company the Postmaster General, acting under authority of the provisions of the Act of 1908, withdrew from the mail the empty mail bags, and the same were thereafter transported by freight over claimant's line of railway, and the weights were not included in estimating the weight of the mail carried during the contract term beginning July 1, 1910.

The findings give the number of pounds of empty mail

bags withdrawn from the mails during the weighing season of 1910 and sent by freight to St. Louis from Texarkana, Arkansas, and Little Rock, Arkansas, and show that if these empty bags had not been so withdrawn and the weight thereof had been included with the weight of the mails, upon which compensation was based, the claimant would have received $15,296.82 more than it did receive for service performed between July 1, 1910, and February 1, 1912.

During the period from July 1, 1910, to and including January 31, 1912, a total of 1,452,271 pounds of empty mail bags were transported over the railroad of the claimant in freight trains from Texarkana, Arkansas, to St. Louis, Missouri, for which service the claimant submitted bills at the published tariff rate against the United States amounting in the aggregate to $14,043.17. In making settlement of these charges the Auditor for the Post Office Department made a deduction for the entire charge for the services performed from Texarkana, Arkansas, to Poplar Bluff, Missouri, amounting to $8,251.45.

The sixth section of the Act of 1853 provides: "The United States Mail shall at all times be transported on the said road and branches, under the direction of the Post-Office Department, at such price as Congress may by law direct."

And the thirteenth section of the Act of July 12, 1876, c. 179, 19 Stat. 78, 82, provides: "That rail-road-companies whose railroad was constructed in whole or part by a land-grant made by Congress on the condition that the mails should be transported over their road at such price as Congress should by law direct shall receive only eighty per centum of the compensation authorized by this act."

The findings further state that ever since the passage of said last-mentioned act it has been the custom and practice of the Post Office Department to pay all the railroads

whose construction was aided by grants of land from the United States 80 per centum of the rate of compensation paid to non-land-aided roads for carrying the mails.

Claimant presented its bill for the transportation of said freight at the full commercial rate provided by the duly published and approved tariffs. In making settlement therefor, the Postmaster General made deduction of the entire charge between Texarkana, Arkansas, and Poplar Bluff, Missouri, and refused to pay anything therefor, on the ground that the Railway Company was obliged by the provisions of the Acts of 1853 and 1866 to transport said empty mail bags without cost or expense to the United States.

Upon these findings the Court of Claims decided against the claimant, and dismissed its petition. 53 Ct. Clms. 45.

Two questions are presented, which are thus stated in the opinion of the Court of Claims:

"(1) Could the empty mail bags be lawfully withdrawn from the mails merely for the purpose of reducing claimant's compensation for mail transportation service?

"(2) And assuming that said empty mail bags were lawfully withdrawn from the mails and shipped by freight, were they 'property' of the United States within the purview of the land-grant acts of 1853 and 1866?"

As to the first question there can be little difficulty. There was nothing in any law or contract of the Government which required it to permit the weighing of empty sacks or containers as part of the mail in determining the compensation to be paid for carrying the same. While, generally speaking, a bag or container in which letters or other mailable matter is carried is part of the mail, and collectively the containers might be considered as part of the mail essential to carry the mailable matter from one place to another, nevertheless there was nothing to prevent Congress, in fixing compensation for the carriage of the mails to expressly withdraw therefrom the empty

mail bags, and this it did by the Act of May 27, 1908, above quoted.

For the purposes of fixing compensation in the weighing of the mail Congress directed that the weight of the empty bags should be withheld in determining the average weight of the mails as the basis of fixing compensation. We agree with the Court of Claims that such action violated no contractual or other right of the claimant.

Concerning the other question presented there is perhaps more difficulty. By the sixth section of the Act of 1853 it was directed that the United States mail should be transported over the claimant's road at such prices as Congress may by law direct, and by the thirteenth section of the Act of July 12, 1876, a railroad aided by grants of land made by Congress on condition that Congress should fix the basis of compensation for transportation of mails over its lines should receive 80 per centum of the compensation provided for in the act. These acts make specific reference to the amounts to be paid for the transportation of the mails. The payment provided in them is for the transportation of the mails which, it may be conceded, might include with the mail-matter the bags in which the same was carried. However, by the Act of May 27, 1908, the Congress has classified empty mail bags with furniture and equipment and other supplies for the postal service, to be transported by freight or express. Congress thus undertook to make a separate provision covering the carrying of empty mail containers after they had served their purpose of enclosing the mail-matter during transportation.

It is insisted that the return of the empty mail bags is but part of the transportation of the mail. But certainly Congress might provide that empty mail bags should be differently treated than those used in the actual transportation of mailable matter. None will dispute that forwarding mail bags from their place of manufacture to

different points in the country for use would not constitute transportation of mail. We see no reason why Congress may not regard empty mail bags, being returned for further use, as no longer a part of the mails. Congress authorized contracts for the transportation of the mail, but by the Act of May 27, 1908, it withdrew empty mail bags from mail transportation and directed that they be sent by freight or express. How then was such transportation to be compensated? Ordinarily the applicable freight or express rates would control. But the acts of Congress which provided that property of the United States should be transported at the expense of the company were in full force and effect. It is said that in the report and action upon the legislation which took empty mail bags from carriage as part of the mails and directed the carriage by freight or express there is no intimation that the result of such legislation would have the effect of obtaining free transportation under the land-grant acts, and that no such requirement is made in the act itself. But, Congress must be presumed to have known of its former legislation in the Acts of 1853 and 1866, and to have passed the new laws in view of the provisions of the legislation already enacted. These statutes must be construed together and effect given to all of them. Under the earlier acts this railroad in consideration of benefits received, was bound, when required, to transport troops and property of the United States free of charge.

We have here a question concerning the transportation of property of the United States. See *Southern Pacific Co. v. United States*, 237 U. S. 202, 204. The act of Congress providing for fifty per cent. rates concerns only "army" transportation and is not applicable to this case. See 22 Stat. 120; 1st Supp. Rev. Stats., 375, 376. The empty mail bags were property, and belonged to the United States. When the Government required their transportation by freight, the former legislation which accom-

panied the grant of lands to this railway company controlled the terms of carriage.

We find no error in the judgment of the Court of Claims, which was also the conclusion of the Comptroller of the Treasury, 17 Comp. Dec. 749.

*Affirmed.*

Mr. Justice McReynolds, dissenting.

Appellant's right to recover seems quite plain to me.

The Act of February 9, 1853, c. 59, 10 Stat. 155, granted lands afterwards used to aid in constructing appellant's lines. Section 4—". . . The said railroad and branches shall be and remain a public highway for the use of the Government of the United States, free from toll or other charge upon the transportation of any property or troops of the United States." Section 6—"That the United States Mail shall at all times be transported on the said road and branches, under the direction of the Post-Office Department, at such price as Congress may by law direct."

The Act of July 28, 1866, c. 300, 14 Stat. 338, among other things, revived and extended the Act of 1853. Section 1—" . . . *And provided further,* That all property and troops of the United States shall at all times be transported over said railroad and branches at the cost, charge, and expense of the company or corporation owning or operating said road and branches respectively, when so required by the government of the United States."

And thus it appears that one section of the statutes directs free transportation of "all property and troops of the United States" and a wholly different section requires transportation of the United States mail "under the direction of the Post-Office Department, at such price as Congress may by law direct."

Through the Post Office Department, the United States

are engaged in handling the mails for pay. Their transportation is part of a well defined business. In the orderly course and as an essential part of that business emptied sacks are constantly being returned for further use. They are property of the United States in a certain sense, whether full or empty; and they are elements of the mail whether going out or coming back.

A clear distinction between property of the United States and United States mail is preserved by the very language of the land-grant statutes; and, I think, Congress had no purpose—if, indeed, the power—to convert mail into property within the meaning of these statutes simply by directing carriage of the former in freight trains. The purpose was to secure transportation at less than former cost, and to such end Congress, in effect, commanded that emptied bags, a portion of the mails for which rapid movement is not essential, "shall be transmitted by either freight or express" and compensation made according to the ordinary rates. Under this interpretation, the railroad would suffer no oppressive burden and contemplated economies would be effectuated.