Shirley VALDEZ, for herself and as next friend of Celia Valdez, Antonia Valdez, and Raquel Valdez, minors, Plaintiffs,

v.

Herbert J. GROVER, individually and in his capacity as State Superintendent of Public Instruction; Donald A. Anderson, individually and in his capacity as Chief of the Special Needs Section of the Department of Public Instruction; and Their Agents, Employees, Successors in Office, Assistants, and all others Acting in Concert or Cooperation with them or at their Direction or under their Control, Defendants.

No. 83–C–290–C.

United States District Court, W.D. Wisconsin.

April 25, 1983.

Gail McCarthy, Legal Action of Wis., Inc., Madison, Wis., for plaintiffs.

Daniel Stier, Asst. Atty. Gen., Madison, Wis., for defendants.

## OPINION AND ORDER

CRABB, Chief Judge.

This is a civil action for injunctive and declaratory relief brought pursuant to 42 U.S.C. § 1983 and Chapter I of the Education Consolidation and Improvement Act of 1981, 20 U.S.C. § 3801, *et seq.* Jurisdiction is asserted under 28 U.S.C. § 1331. The case is before the court on plaintiffs' motion to enjoin defendants preliminarily from failing to establish and consult with a parent advisory council as part of the migrant education program in the State of Wisconsin.

For the purpose only of deciding this motion, I find the following facts from the stipulation of the parties.

### FACTS

Plaintiff Shirley Valdez is a former migratory agricultural worker who resides in Madison, Wisconsin. She is a nominee for membership in the Wisconsin State Superintendent's Advisory Council on Migrant Education and has been informed by defendant Anderson that she is the first on the list of nominees to be appointed by defendant Grover when vacancies occur.

Plaintiffs Antonia Valdez, age 14, Celia Valdez, age 13, and Raquel Valdez, age 11, are students in the migrant education program in the Madison Metropolitan School District. They reside in Madison, Wisconsin with their parents, plaintiff Shirley Valdez and Oscar Valdez. This action is brought on their behalf by Shirley Valdez, their next friend. Plaintiffs are members of a family of formerly migratory agricultural workers who travelled from the state of California to the state of Wisconsin in September, 1981, to work in agricultural employment. Because they moved from one school district to another within the past five years to enable family members to obtain agricultural employment, the plaintiff children are eligible beneficiaries under the federal migrant education program. 20 U.S.C. §§ 2762 and 3803. Plaintiff Antonia Valdez is in the eighth grade, plaintiff Celia Valdez is in the seventh grade, and plaintiff Raquel Valdez is in the fifth grade in the Madison Metropolitan School District.

Defendant Herbert J. Grover is the State Superintendent of Public Instruction of the Department of Public Instruction and as such is charged with the lawful administration of the state's migrant education program. In all respects relevant to this action, defendant Grover has acted under color of state law.

Defendant Donald A. Anderson is the Chief of the Special Needs Section of the Department of Public Instruction and as such is charged with the lawful administration of the state's migrant education program. In all respects relevant to this action, defendant Anderson has acted under color of state law.

The Department of Public Instruction received $1,370,123 from the United States Department of Education in Chapter 1 funds to operate a migrant education program in Wisconsin for the 1982–83 school year. Until May, 1982, the department had an established migrant education parent advisory council which was involved actively in the planning, implementation, and evaluation of the migrant education program in the state of Wisconsin.

In May, 1982, defendant Grover disbanded the State Parent Advisory Council and announced the formation of the Wisconsin State Superintendent's Advisory Council on Migrant Education. Although he indicated he would convene the new council by July 1, 1982, defendant Grover did not appoint members to serve on the Wisconsin State

Superintendent's Advisory Council on Migrant Education until October, 1982. Of the fourteen persons appointed by defendant Grover, only four were parents of currently or formerly migratory children. The terms of members' offices range from one to three years.

On or about January 26, 1983, defendant Anderson convened the first meeting of the Wisconsin State Superintendent's Advisory Council on Migrant Education in Fond du Lac, Wisconsin. Defendant Anderson stated that the council was constituted in agreement with the Wisconsin State Plan for fiscal year 1983 and the present Chapter 1 legislation. At this meeting, the membership of the council approved a motion that the council recommend to defendant Grover that the membership be changed to achieve a simple majority of migratory parents and students.

On or about March 10, 1983, at the second meeting of the council, defendant Anderson stated that defendant Grover had refused its recommendation that a simple majority of the council be migratory parents and students. Defendant Anderson also stated that no additional migratory parents or students would be appointed to the council by defendant Grover until vacancies occurred either by resignation or by expiration of terms. Defendant Anderson indicated that the Department of Public Instruction no longer has a migrant education parent advisory council, does not intend to establish one, and is not required by law to do so.

Because of her interest in improving the education of migratory children in Wisconsin through a state parent advisory council, plaintiff Shirley Valdez wrote to defendant Anderson in December, 1982, to request that a state parent advisory council be reestablished, and she has attended both meetings of the Wisconsin State Superintendent's Advisory Council on Migrant Education.

Because she is not a member of the Wisconsin State Superintendent's Advisory Council on Migrant Education, plaintiff Shirley Valdez has not been able to make motions or vote on matters before the council. As a visitor, she has the opportunity to speak at the close of the agenda.

Defendants currently are planning the Wisconsin State Plan and application for funding for the 1983–84 school year which they intend to submit to the U.S. Department of Education by April 29, 1983. Defendants are planning the Wisconsin Migrant Education program for the 1983–84 school year without consulting with a parent advisory council. Defendants have implemented and evaluated the Wisconsin migrant education program for the 1982–83 school year without consulting with a parent advisory council.

## OPINION

At the outset, I must decide whether there is a private right of action available to enforce the requirement of a parent advisory council and if there is, whether these plaintiffs have standing to bring such an action.

Defendants argue that even if parent advisory councils are still required under the Education Consolidation and Improvement Act of 1981, which they do not concede, a violation of that requirement does not create a claim enforceable by plaintiffs under 42 U.S.C. § 1983. It is defendants' position that because Chapter 1 of the Education Consolidation and Improvement Act of 1981 provides an express remedy in the form of withholding of federal funds by the Secretary of the Department of Education, no private party can sue to enforce the requirements of the Act. Defendants cite *Middlesex County Sewerage Authority v. National Sea Clammers*, 453 U.S. 1, 101 S.Ct. 2615, 69 L.Ed.2d 435 (1981) and *Pennhurst State School & Hospital v. Halderman*, 451 U.S. 1, 101 S.Ct. 1531, 67 L.Ed.2d 694 (1981) in support of their position.

Both *Sea Clammers* and *Pennhurst* are inapposite to the instant case. In *Sea Clammers*, the legislation in issue (the Federal Water Pollution Control Act and the Marine Protection, Research, and Sanctuaries Act of 1972) had detailed enforcement mechanisms which could be utilized by pri-

vate citizens and government officials. The question before the Supreme Court was whether private citizens could raise claims of illegal dumping and discharge in a private suit for injunctive relief, independent of the specific citizen-suit procedures spelled out in the Acts. In concluding that such an action could not be maintained, the Court held that the "unusually elaborate enforcement provisions" in the two Acts indicated that Congress did not intend to authorize additional judicial remedies by implication. *Sea Clammers,* 453 U.S. at 13, 101 S.Ct. at 2623.

Unlike the Federal Water Pollution Control Act and the Marine Protection, Research, and Sanctuaries Act, the Education Consolidation and Improvement Act of 1981 does not provide any enforcement provision for private parties. Thus, there is no evidence of a congressional intention to withdraw any § 1983 remedy that would otherwise be available. In fact, when Congress enacted procedures for federal review of states' resolutions of administrative complaints as part of the 1978 amendments to Title I, the Senate Committee expressed the view that the administrative remedies were not exclusive. The committee report stated:

> However, the committee wishes to emphasize that these amendments prescribing a complaint resolution process at all three levels should not be construed to prohibit a beneficiary of Title 1 or his representative from bringing a private suit in district court without first exhausting such administrative procedures. It is particularly important that immediate access to the courts be available where beneficiaries allege that a State or Federal policy is inconsistent with Title 1 or that the alleged violations are systematic.

S.Rep. No. 95–856, 95th Cong., 2nd Sess. 31 (1978).

█ As a general rule, a § 1983 remedy is available for alleged violations of federal statutory as well as constitutional law. *Maine v. Thiboutot,* 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980). It is defend-

ants' burden to show that Congress has withdrawn the § 1983 remedy. *Sea Clammers,* 453 U.S. at 20–21, n. 31, 101 S.Ct. at 2626, n. 31. I conclude that defendants have not met that burden in this case.

*Pennhurst State School & Hospital v. Halderman,* 451 U.S. 1, 101 S.Ct. 1531, 67 L.Ed.2d 694 (1981), does not compel a different result. In that case, the requirement at issue was whether the Developmentally Disabled Assistance and Bill of Rights Act of 1975, 42 U.S.C. § 6000 *et seq.,* created any enforceable right in a mentally retarded person to the provision of "minimally adequate habilitation" in the "least restrictive environment." In finding that there was no such right, the Supreme Court concluded that Congress had not made such provision a condition of federal funding, but had merely "express[ed] a congressional preference for certain kinds of treatment." *Pennhurst,* 451 U.S. at 19, 101 S.Ct. at 1540. By contrast, it is clear that if the Education Consolidation and Improvement Act of 1981 requires that states establish and consult with parent advisory councils, it does so as a condition of federal funding. Thus, *Pennhurst·* is of no precedential value to this case.

I find and conclude that there is a § 1983 remedy available for violations of those provisions of the Education Consolidation and Improvement Act of 1981 that are preconditions to federal funding of state migrant education programs.

█ I turn then to the question whether plaintiff Shirley Valdez has standing to maintain this action in her own right. As a prospective nominee, her stake in the outcome of the case is tenuous. It is not at all clear that the members of the council are the persons who are the intended beneficiaries of the provisions of the Act. However, it is clear that, as formerly migrant children enrolled in the Madison, Wisconsin public school, Antonia Valdez, Celia Valdez, and Raquel Valdez, are among the intended beneficiaries and that as their next friend, Shirley Valdez can maintain this action on their behalf.

With the threshold questions of federal jurisdiction and standing resolved, I turn to the issue whether the Education Consolidation and Improvement Act of 1981 requires the establishment of parent advisory councils in the planning of migrant education programs.

In 1981, Chapter 1 of the Education Consolidation and Improvement Act, 20 U.S.C. § 3801 *et seq.,* superseded Title I of the Elementary and Secondary Education Act, 20 U.S.C. § 2701, et seq. It did not supplant it in its entirety, but incorporated by reference certain provisions of the old Title 1, including the provision pertinent to this case: Subpart 1 of Part B, which covers the Programs for Migratory Children operated by State Agencies. Part B, Subpart 1, "Programs for Migratory Children," of Title I, referred to at Chapter 1, 20 U.S.C. § 3803, reads as follows:

PART B—PROGRAMS OPERATED BY STATE AGENCIES

Subpart 1—*Programs for Migratory Children*

§ 2761. *Entitlement and amounts of grants*

(a) *Entitlement.*—A State educational agency or a combination of such agencies shall, upon application, be entitled to receive a grant for any fiscal year under this part to establish or improve, either directly or through local educational agencies, programs of education for migratory workers or of migratory fishermen which meet the requirements of section 2762 of this title.

(b) *Amount of grant.*—[Funding formula]

§ 2762. *Program Requirements*

(a) *Requirements for approval of application.*—The Commissioner may approve an application submitted under section 2761(a) of this title only upon his determination—

... (4) that in planning and carrying out programs and projects at both the State and local educational agency level, there has been and will be appropriate consultation with parent advisory councils established in accordance with regula-

tions of the Commissioner (consistent with the requirements of section 2735(a) of this title).

From these provisions, it would appear clear that in enacting the 1981 legislation, Congress intended to maintain parent advisory councils as a prerequisite to federal funding of state migratory education programs. Complicating the issue, however, is the fact that section 2735(a), which sets forth the requirements of parent advisory councils, is part of a provision (Subpart 3 of Part A of Title I) which was not retained in the new legislation. Defendants view the non-retention of § 2735(a) as eliminating any obligation on their part to establish and consult with parent advisory councils in connection with migrant education plans.

■ Plaintiffs point out that when Congress created the parent advisory council requirement for migrant education programs in 1978, it did so by enacting § 2762(a)(4) and cross-referencing that section to the already existing framework for the establishment and operation of parent advisory councils that was set out in the provisions of Title I—Basic. In enacting the Education Consolidation and Improvement Act of 1981, Congress chose not to continue the requirement that Title I—Basic grantees establish and consult with parent advisory councils and repealed that requirement as it applied to Part A programs; but, plaintiffs argue, Congress maintained it as a requirement for Part B programs by not eliminating the reference to it in § 2762(a)(4). Only if the repeal of § 2735 is seen as an implicit repeal of § 2762(a) can defendants' position be sustained.

The issue is not clear-cut. The reference to a repealed provision creates some ambiguity in the interpretation of § 2762(a)(4). However, I conclude that plaintiffs are correct in their interpretation. They have on their side not only the canon of construction that militates against repeal by implication, but the rule favoring the upholding of legislation where it is possible to do so by severing invalid or infirm provisions. *See, e.g., Buckley v. Valeo,* 424 U.S. 1, 108–09, 96 S.Ct. 612, 677–78, 46 L.Ed.2d 659 (1976) (per

curiam). Additionally, plaintiffs can point to the canon of construction "that a later statute, general in its terms and not expressly repealing a prior special statute, will ordinarily not affect the special provisions of such earlier statute." *Rodgers v. United States,* 185 U.S. 83, 87, 22 S.Ct. 582, 583, 46 L.Ed. 816 (1902), quoted in *Radzanower v. Touche Ross & Co.,* 426 U.S. 148, 153, 96 S.Ct. 1989, 1993, 48 L.Ed.2d 540 (1976). The parent advisory council requirement as it relates to migrant education is a specific response to a particular problem addressed by Congress when it added the parent advisory council requirement in 1978 to meet the special concerns it had about migrant education.

Finally, as plaintiffs note, it must be presumed that Congress knew the contents of the provisions of § 2762(a)(4) when it incorporated them into the new statute by reference in § 3803(a). *See, e.g., St. Louis, I.M. & S., Ry. Co. v. United States,* 251 U.S. 198, 207, 40 S.Ct. 120, 122, 64 L.Ed. 225 (1920).

Defendants argue that Congress did not intend to keep the parent advisory council requirement for any programs because such a requirement would contravene the intent of Congress in enacting the Education Consolidation and Improvement Act of 1981, which was to free education officials from "overly prescriptive regulations and administrative burdens which are not necessary for fiscal accountability and make no contribution to the instructional program." 20 U.S.C. § 3801. But Congress enacted the parent advisory council requirement to ensure that the instructional program would meet the needs of migrant children, out of an expressed concern that "the needs of those children are not yet being adequately met." H.R.Rep. No. 95–1137, 95th Cong., 2d Sess. 40, reprinted in [1978] *U.S.Code Cong. & Admin.News,* 4971, 5010; S.Rep. 95–856, 95th Cong., 2d Sess. 24. Defendants are not persuasive when they assert that in 1981 Congress viewed as unnecessary "administrative burdens" the parent advisory councils that in 1978 it had thought were "crucial to ensure that [migrant] children remain in school...." *Id.*

■ Defendants argue also that the United States Department of Education has published proposed regulations that makes the establishment of parent advisory councils for migrant education programs permissible, and not mandatory. As defendants urge, an agency's interpretation of the laws it is charged with administering is entitled to consideration. However, in this instance, the agency's proposed regulation is inconsistent with what I have concluded is the import of the statute. An agency interpretation of a statute cannot overrule Congress's intent in enacting the statute. *Mohasco Corp. v. Silver,* 447 U.S. 807, 825, 100 S.Ct. 2486, 2496–97, 65 L.Ed.2d 532 (1980). Moreover, the regulations which are in force at this time require the establishment of parent advisory councils. 34 C.F.R. § 204.55(b)(2). Until they have been repealed or superseded, they have the force and effect of law.

Having concluded that plaintiffs have a strong likelihood of success on the merits of their claim that parent advisory councils remain a requirement for migrant education plans, I now consider the remaining three factors that guide a court's discretion in granting or denying a preliminary injunction. *Banks v. Trainor,* 525 F.2d 837, 841 (7th Cir.1975), *cert. denied,* 424 U.S. 978, 96 S.Ct. 1484, 47 L.Ed.2d 748 (1976). The first of these is the matter of irreparable harm.

Plaintiffs contend that they will be harmed irreparably if the injunction does not issue. Plaintiff Shirley Valdez alleges that she will be harmed by not being allowed to participate in the state's planning for the 1983–84 migrant education program. The other plaintiffs face the potential of harm if migrant parent views are not incorporated into the state's educational policies affecting them.

■ On one level, it is difficult to assess the likelihood of real harm to these plaintiffs if the parent advisory council requirement is ignored. Plaintiffs have not shown how any migrant education program is likely to be affected by a mere increase in the number of migrant parents on the advisory

council. However, I need not make an independent finding that a program designed without the participation of a majority of migrant parents is less effective than one designed by a group including a majority of migrant parents. Congress has made that finding as the premise for the enactment of the parent advisory council requirement in § 2762(a)(4).

Planning for the 1983–84 migrant education program is well under way. Indeed, there is a question whether any relief is available even if the preliminary injunction issues. Certainly, to delay a grant of the injunction would deprive the Valdez children of the benefits of migrant parent involvement in their educational planning for another full year. I find and conclude that plaintiffs have demonstrated that they will suffer irreparable harm if the preliminary injunction does not issue. *See Martinez v. Mathews,* 544 F.2d 1233 (5th Cir.1976).

Turning to the factor of the balance of harms, I note defendants' argument that plaintiffs have waited far too long to bring this motion for a preliminary injunction and that their delay not only undermines their claims of irreparable harm and need for immediate relief, but has the potential of creating intolerable administrative burdens for defendants in the planning for next year if plaintiffs prevail at this late date. Plaintiffs counter by noting that the delays reflected their uncertainty as to defendants' position on the parent advisory council requirement and an effort on their part to reach a resolution of the issue without going to court.

I am persuaded that defendants have shown no such willful or unjustifiable delay by plaintiffs as either to constitute laches or to preclude the granting of preliminary injunctive relief at this time. It is true that the granting of the injunction will create administrative difficulties for defendants but these difficulties are of far less significance than the achievement of authentic parental involvement in the planning of migrant educational programs.

Finally, I conclude that it will not disserve the public interest to grant a preliminary injunction to enforce the congressional purpose of providing federal financial assistance to effective migrant education programs.

### ORDER

IT IS ORDERED that plaintiffs' motion for a preliminary injunction is GRANTED. Defendants are enjoined preliminarily from failing to constitute and consult with a parent advisory council as defined in 34 C.F.R. § 204.55(b)(2), as part of the migrant education program in the State of Wisconsin.