SHWARTZ, Circuit Judge,
concurring.
I write separately to provide an analysis of the Supreme Court precedent relevant to whether Title VII displaces Title IX because that issue was the ground on which the District Court dismissed the case, a focus of the parties’ arguments on appeal, and the specific subject about which we requested oral argument. As explained below, Supreme Court precedent supports allowing plaintiffs to pursue relief for gender-based employment discrimination at federally-funded educational institutions via Title IX regardless of whether a plaintiff has satisfied Title VTI’s exhaustion requirements.
First, the Supreme Court has held that, based upon its broad statutory language and legislative history, Title IX bans employment discrimination on the basis of gender, N. Haven Bd. of Educ. v. Bell (North Haven), 456 U.S. 512, 525, 535-36, 102 S.Ct. 1912, 72 L.Ed.2d 299 (1982), and provides plaintiffs a private right of action to seek damages, Cannon v. Univ. of Chi., 441 U.S. 677, 696, 717, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979).
Second, the Supreme Court has recognized that Title VII is not the exclusive means to address employment discrimination. Johnson v. Ry. Express Agency, Inc., 421 U.S. 454, 459, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975) (recognizing that while Title VII provides “a comprehensive solu *165 tion for the problem[s] of invidious discrimination in employment, the aggrieved individual clearly is not deprived of other remedies he possesses and is not limited to Title VII in his search for relief’); Alexander v. Gardner-Denver Co., 415 U.S. 36, 48, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974) (“[T]he legislative history of Title VII manifests a congressional intent to allow an individual to pursue independently his rights under both Title VII and other applicable state and federal statutes.”).
Third, the Supreme Court has observed that Title IX and Title VII are “vastly different” statutes. Jackson v. Birmingham Bd. of Educ., 544 U.S. 167, 175, 125 S.Ct. 1497, 161 L.Ed.2d 361 (2005). While the two statutes address the same type of conduct, they target different offenders, have different statutes of limitations, and provide some different remedies. Moreover, they were enacted to achieve different goals: Title IX protects individuals from gender discrimination at educational institutions receiving federal funds, and Title VII compensates victims of discrimination by their employers. Gebser v. Lago Vista Indep. Sch. Dist., 524 U.S. 274, 287, 118 S.Ct. 1989, 141 L.Ed.2d 277 (1998). The Court has held that statutes with such overlapping purposes may coexist, particularly when they reach different situations, and there is an obligation to enforce both. See J.E.M. Ag Supply, Inc. v. Pioneer Hi-Bred Int’l, Inc., 534 U.S. 124, 143, 122 S.Ct. 593, 151 L.Ed.2d 508 (2001).
Fourth, not only are Title VII and Title IX appropriately viewed as two avenues to seek relief for employment discrimination but, as stated in the Panel’s opinion, the standard for proving a- Title VII claim applies to gender-discrimination claims arising under Title IX. By holding that Title VII standards apply to Title IX employment claims, our sister circuits recognize that these statutory avenues to address employment discrimination coexist.
Fifth, while the Supreme Court has held that Congress’s enactment of a comprehensive scheme to address a problem may demonstrate “congressional intent to preclude” seeking remedies via other statutes, see Middlesex Cty. Sewerage Auth. v. Nat’l Sea Clammers Ass’n, 453 U.S. 1, 20, 101 S.Ct. 2615, 69 L.Ed.2d 435 (1981), that principle is not applicable here because Title IX was enacted after Title VII. When Congress drafted Title IX, it was aware of Title VIPs administrative framework and chose not to include a similar scheme for bringing Title IX claims. See St. Louis, I.M. & S. Ry. Co. v. United States, 251 U.S. 198, 207, 40 S.Ct. 120, 64 L.Ed. 225 (1920) (stating that “Congress must be presumed to have known of its former legislation ... and to have passed the new laws in view of the provisions of the legislation already enacted”). Instead, Congress enacted a pre-suit notification requirement. 20 U.S.C. § 1682; Gebser, 524 U.S. at 290, 118 S.Ct. 1989 (“Because the express remedial scheme under Title IX is predicated upon notice to an ‘appropriate person’ and an opportunity to rectify any violation, 20 U.S.C. § 1682, we conclude, in the absence of further direction from Congress, that the implied damages remedy should be fashioned along the same lines.”). This intentional selection confirms that Congress meant to allow Title IX claims to be brought to court without compliance with the administrative requirements for Title VII claims. This is consistent -with Congress’s choices in other antidiscrimination statutes in which it does not require administrative exhaustion before filing suit. See, e.g., 29 U.S.C. § 621 (age discrimination); id § 206(d) (equal pay). We may presume that when Congress includes an administrative scheme to address a problem in one statute and omits it from another that it does so intentionally. *166 [1] Cf. Duncan v. Walker, 533 U.S. 167, 173, 121 S.Ct. 2120, 150 L.Ed.2d 251 (2001) (discussing that when Congress includes language in one statute, but not in another, it is presumed to have intentionally included and excluded the provision).
For these reasons, Supreme Court precedent warrants concluding that Title IX provides an independent avenue that coexists with Title VII for pursuing claims of gender-based employment discrimination.

. As noted in the Panel's opinion, the District Court, following Lakoski v. James, 66 F.3d 751, 754 (5th Cir. 1995), held that Title VII displaces Title IX because allowing Title IX employment discrimination claims to proceed without satisfying Title VII’s exhaustion requirements. would upset Congress’s remedial scheme for redressing employment discrimination. While there are circumstances in which the existence of a comprehensive remedial scheme in a statute will demonstrate that Congress intended for that statute to be the exclusive avenue for relief, as explained herein, Supreme Court precedent leads to the conclusion that Title IX provides an avenue for relief for gender-based employment discrimination at federally funded educational institutions. Even though this seemingly enables employees at such institutions to avoid an administrative requirement other employees who proceed via Title VII must follow, this conclusion flows from the precedent described herein and Congress’s goal in enacting Title IX to eradicate gender discrimination in places of learning.