UNITED STATES of America,
Plaintiff-Appellee,

v.

James Wesley HARRISON, Jr.,
Defendant-Appellant.

No. 71–1853.

United States Court of Appeals,
Fifth Circuit.

June 6, 1972.

Rehearing Denied June 19, 1972.

Robert J. Stamps, New Orleans, La. (Court Appointed), for defendant-appellee.

Gerald P. Gallinghouse, U. S. Atty., Robert L. Livingston, Michael H. Ellis, Mary Williams Cazalas, Asst. U. S. Attys., for plaintiff-appellee.

Before WISDOM, GODBOLD and RO-NEY, Circuit Judges.

WISDOM, Circuit Judge:

James Wesley Harrison appeals from his conviction on four counts of transporting forged money orders in interstate commerce in violation of 18 U.S.C. § 2314. We affirm.

On June 30, 1970, a warrant was issued for Harrison's arrest because of parole violations. The arrest warrant was secured by the New Orleans office of the Federal Bureau of Investigation at the request of the United States Board of Parole. It was not until November 9, 1970, when the F.B.I. finally located Harrison, that the arrest was made. On that date F.B.I. agents went to Harrison's apartment, found Harrison lying on a mattress, placed him under arrest for parole violations, and advised him of his rights. Harrison claimed that he was "Darryl Vail" but later admitted his identity.

After making the arrest, the F.B.I. agents searched the area around Harrison for weapons. In a cigar box on a table next to the mattress where Harrison was lying, the agents discovered a wallet. The wallet contained several pieces of false identification and a forged money order in the name of Samuel H. Collins.

Harrison was taken directly to jail. The following day, November 10, 1970, F.B.I. agents visited Harrison at the jail. Harrison was again advised of his rights although he refused to sign a waiver-of-rights form. After being questioned, Harrison signed a written confession, executed partially by an agent and partially by Harrison, to having cashed four forged money orders. On November 13, 1970, Harrison was taken before a United States Commissioner.

On February 25, 1971, the federal grand jury indicted Harrison on four counts of transporting forged money orders in interstate commerce in violation of 18 U.S.C. § 2314. Prior to the indictment, Harrison had unsuccessfully sought to have the evidence seized as a result of the search of his apartment on November 9, 1970, suppressed. After the indictment was returned, Harrison sought unsuccessfully to have his confession suppressed. A jury found Harrison guilty on all four counts, and he was sentenced to serve two years on each count with the sentences to run concurrently.

## I.

On appeal, Harrison argues, first, that the district court erred in denying his motion to suppress the evidence seized as a result of the search on November 9, 1970.[1] Harrison contends that the search was conducted in violation of his Fourth Amendment right to be free from "unreasonable searches and seizures". We hold that the search was a reasonable search incident to a lawful arrest and that the district judge was correct in denying the motion to suppress the evidence seized as a result of the search.

In Chimel v. California, 1969, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685, the Supreme Court, overruling Harris v. United States[2] and United States v. Rabinowitz,[3] severely limited the permissible scope under the Fourth Amendment of a search incident to a lawful arrest. The court said:

When an arrest is made, it is reasonable for the arresting officer to search the person arrested in order to

---

1. Harrison also objects to the introduction of certain "derivative evidence" allegedly discovered as a result of the search on November 9, 1970. Because we hold that the search on November 9, 1970, did not violate Harrison's Fourth Amendment rights, this contention must fail.

2. 331 U.S. 145, 67 S.Ct. 1098, 91 L.Ed. 1399 (1947).

3. 339 U.S. 56, 70 S.Ct. 430, 94 L.Ed. 653 (1950).

remove any weapons that the latter might seek to use in order to resist arrest or effect his escape. Otherwise, the officer's safety might well be endangered, and the arrest itself frustrated. In addition, it is entirely reasonable for the arresting officer to search for and seize any evidence on the arrestee's person in order to prevent its concealment or destruction. And the area into which an arrestee might reach in order to grab a weapon or evidentiary items must, of course, be governed by a like rule. A gun on a table or in a drawer in front of one who is arrested can be as dangerous to the arresting officer as one concealed in the clothing of the person arrested. There is ample justification, therefore, for a search of the arrestee's person and the area "within his immediate control"—construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence.

395 U.S. at 762–763, 89 S.Ct. at 2040. *See also* Preston v. United States, 1964, 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed.2d 777;[4] Peters v. State of New York, 1968, 392 U.S. 40, 88 S.Ct. 1889, 20 L. Ed.2d 917; ALI Model Code of Pre-Arraignment Procedure, § .230.5 and commentary, Proposed Official Draft No. 1.

In the present case, Harrison does not contest the lawfulness of his arrest as a parole violator. He does, however, argue that the arrest was used as a "mere pretext" for a search of his apartment which went beyond the bounds of *Chimel*. We believe, however, that the search was a reasonable search incident to a lawful arrest and did not exceed the limits of *Chimel*. Harrison was found lying on a mattress in his apartment. Within "the area from within which [the arrestee] . . . might gain possession of a weapon or destructible evidence", 395 U.S. at 763, 89 S.Ct. at 2040, was a table. On the table was a cigar box. It was reasonable for the agents to search this box— " 'within [Harrison's] . . . immediate control' ", 395 U.S. at 763, 89 S.Ct. 2034, for weapons. "A gun on a table or in a drawer in front of one who is arrested can be as dangerous to the arresting officer as one concealed in the clothing of the person arrested". 395 U.S. at 763, 89 S.Ct. at 2040. It was also reasonable for the agents to search the box, and as a result seize the wallet and its contents, for "destructible evidence . . . something that could be used as evidence against [the arrestee]", 395 U.S. at 763 and 768, 89 S.Ct. at 2043. Harrison, denying his true identity, asserted that he was "Darryl Vail". Since the agents were executing a warrant for the arrest of a person they did not know, issued at the request of the United States Board of Parole in Washington, it was reasonable for them to ascertain the arrestee's identity and seize destructible evidence which could help in establishing that identity, as long as the search and seizure was within the *Chimel* area.

The search did not uncover weapons or evidence of Harrison's true identity. The search yielded evidence—false identification and a forged money order—linking Harrison to another crime. The search and resulting seizure were, however, reasonable as a search of "the area from within which [the arrestee] . . . might have obtained either a weapon or something that could have been used as evidence against him". 395 U.S. at 768, 89 S.Ct. at 2043.

4. The rule allowing contemporaneous searches is justified, for example, by the need to seize weapons and other things which might be used to assault an officer or effect an escape, as well as by the need to prevent the destruction of evidence of the crime—things which might easily happen where the weapon or evidence is on the accused's person or under his immediate control. But these justifications are absent where a search is remote in time or place from the arrest. Preston v. United States, 1964, 376 U.S. 364, 367, 84 S.Ct. 881, 11 L.Ed.2d 777, 780.

## II.

Harrison argues that the district court erred in denying his motion to suppress his confession. He asserts two reasons why the confession should have been suppressed. First, Harrison contends that the confession should be suppressed under the *McNabb-Mallory Rule*.[5] Second, Harrison asks for suppression because the confession was involuntary and the product of coercion.

■ As to the first alleged basis for suppression, Harrison's reliance on the *McNabb-Mallory Rule* is misplaced. The *Rule* dictates that, when an arrestee is not taken before a magistrate "without unnecessary delay", F.R.Crim.P. 5(a), evidence, including a confession, obtained during a period when Rule 5(a) is being violated is inadmissible. The application of the *McNabb-Mallory Rule* to exclude evidence presupposes the applicability of Rule 5(a) and its requirement that an arrestee be promptly taken before a magistrate. Rule 5(a) is not, however, applicable to persons arrested under a parole violator warrant.[6] Rule 5(a) is inapplicable, first, because a parole violator is not technically "arrested" as Rule 5(a) contemplates. Rather, he is, while on parole, constantly in the custody of the Attorney General, and, when arrested under a parole violator warrant, he is merely placed in actual custody rather than allowed constructive custody under a parole status. *See* Zerbst v. Kidwell, 1938, 304 U.S. 359, 58 S.Ct. 872, 82 L.Ed. 1399; 18 U.S.C. §§ 4201–4210.

Congress has designed a comprehensive scheme regulating the granting of parole, the terms of parole, the retaking of a parole violator, and the procedure for revocation of parole. 18 U.S.C. §§ 4201–4210. We find no evidence that Congress intended for the Federal Rules of Criminal Procedure to modify the comprehensive statutory scheme regulating parole procedure.

Finally, the Supreme Court has analogized the status of a parole violator to that of an escaped prisoner. *See* Carlson v. Landon, 1952, 342 U.S. 524, 72 S. Ct. 525, 96 L.Ed. 547; Anderson v. Corall, 1923, 263 U.S. 193, 44 S.Ct. 43, 68 L.Ed. 247. As such a person arrested under a parole violator's warrant would not be accorded the protection of Rule 5(a). *See* Rush v. United States, 5 Cir. 1961, 290 F.2d 709. Because Rule 5(a) is inapplicable to Harrison as an arrestee under a parole violator warrant, Harrison cannot invoke the McNabb-Mallory Rule to exclude his confession. Harrison was in lawful custody under a parole violator warrant at the time of his confession to violations of 18 U.S.C. § 2314; the McNabb-Mallory Rule will not operate to exclude his confession. *See* United States v. Carignan, 1951, 342 U.S. 36, 72 S.Ct. 97, 96 L.Ed. 48.[7]

■ Harrison further contends that his confession should be excluded because the confession was the involuntary result of coercion by federal agents. He testified at trial, and pursues his allegations on appeal, that the agents threatened him with investigation and prosecution of his ill sister. Harrison admits that he was advised of his rights. *See* Miranda v. Arizona, 1966, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694. The trial court found, on the basis of substantial evidence including the testimony of the agents, that the confession was voluntary. We agree. *See* Escobedo v. Illinois, 1964, 378 U.S. 478, 84 S.Ct. 1758,

---

5. *See* McNabb v. United States, 1943, 318 U.S. 332, 63 S.Ct. 608, 87 L.Ed. 819; Mallory v. United States, 1957, 354 U.S. 449, 77 S.Ct. 1356, 1 L.Ed.2d 1479.

6. We do not deal here with a situation where a parole violator is arrested for an offense unrelated to his parole violation or where the arrest for parole violation is a pretext for an arrest for another offense. In such situations, the argument for the applicability of Rule 5(a) is more persuasive.

7. After Harrison confessed to violations of 18 U.S.C. § 2314, a complaint was filed and he was brought before a magistrate.

12 L.Ed.2d 977; Jackson v. Denno, 1964, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908.[8]

### III.

During the hearing on the motion to suppress the confession, Harrison took the stand to testify as to the alleged involuntary nature of the confession. He testified that the interrogating agents threatened to investigate and prosecute his ill sister if he did not confess and that he involuntarily confessed to cashing forged money orders as a result of coercion. On cross-examination, the assistant United States Attorney asked Harrison if his confession was true. Defense counsel objected, but the district judge ordered Harrison to answer or face contempt of court charges or dismissal of the motion to suppress. Harrison then admitted the truth of his confession.

Harrison argues that the action of the trial judge, in ordering Harrison to answer the question about the truthfulness of the confession or suffer contempt charges or dismissal of his motion, was error in that it violated Harrison's Fifth Amendment privilege against compulsory self-incrimination. The trial judge justified his ruling, and the Government seeks to support it on appeal, on the grounds that the question was within the scope of direct examination, i. e. the voluntariness of the confession, and represented an attempt to attack the credibility of the witness rather than an effort to establish the truth or falsity of the confession. The judge said that he probably would not permit the Government to introduce Harrison's testimony, admitting the truthfulness of the confession, at trial.[9] The Government did not introduce the testimony at trial.

■ Assuming, but not deciding, that the trial judge acted improperly in ordering the defendant to admit or deny the truth of his confession rather than allowing the defendant to assert his Fifth Amendment privilege and refuse to answer the question,[10] we do not believe that the alleged error should result in reversal of Harrison's conviction. The statement was not introduced at trial, either for substantive evidence or for purposes of impeachment, and Harrison was not prejudiced by his admission. Further, although the district judge may have based his denial of the motion to suppress the confession in part on Harrison's admission, we have held, independent of the admission, that the denial of the motion was correct.

■ Harrison sought unsuccessfully to quash the indictment against him because, he argued, the trial judge's action in ordering him to admit the truthfulness of his confession necessitated a grant of full transactional immunity in order to protect Harrison's Fifth Amendment rights. We believe, in the limited circumstances of this case, that the trial judge was correct in refusing to grant Harrison full transactional immunity, and quash the indictment.

In Simmons v. United States, 1968, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247, one of the petitioners was required, at a hearing on a motion to suppress certain evidence, to admit that he was the owner of a suitcase. He was compelled to so testify, not under compulsion from the Court, but in order to establish standing to object to an allegedly unreasonable search and seizure. The district court admitted the petitioners' incriminating testimony on the issue of guilt at the trial. Recognizing that a defendant must "risk that the

---

8. Harrison also objects to the introduction of certain "derivative evidence" allegedly discovered as a result of the confession. Because we hold that the confession was constitutionally obtained and properly admitted, this contention must fail.

9. It is unclear from the record whether the district court prohibited the admis-

sion of the testimony or the government did not seek to introduce it. The testimony was not, however, used at trial.

10. We do not decide whether the action by the trial judge forced Harrison to be a witness against himself in derogation of his Fifth Amendment right.

words he utters [at the suppression hearing] may later be used to incriminate him", 390 U.S. 393, 88 S.Ct. 976, the Court stated:

It seems obvious that a defendant who knows that his testimony may be admissible against him at trial will sometimes be deterred from presenting the testimonial proof of standing necessary to assert a Fourth Amendment claim . . . . we find it intolerable that one constitutional right should have to be surrendered in order to assert another. We therefore hold that when a defendant testifies in support of a motion to suppress evidence on Fourth Amendment grounds, his testimony may not thereafter be admitted against him at trial on the issue of guilt unless he makes no objection.

390 U.S. at 393–394, 88 S.Ct. at 975–976. In the present case, Harrison was compelled to choose between dismissal of his motion to suppress, sacrificing his Fifth Amendment protection against the admission of coerced confession, and the danger that his admission would be used against him, sacrificing his Fifth Amendment privilege against compulsory self-incrimination. Although we do not consider it good practice to compel Harrison to make this choice, we believe that the district court, in light of *Simmons*, adequately protected Harrison's Fifth Amendment rights by not allowing the testimony to be admitted against Harrison at trial.[11]

Harrison argues that the action of the trial judge in prohibiting use of the testimony on the issue of guilt is not enough; the district court should have also prohibited use of the testimony for purposes of impeachment. Pointing to *Harris v. New York*, 1971, 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1, holding that certain evidence, inadmissible in the case in chief under *Miranda,* could nevertheless be used for purposes of impeachment of a defendant who took the stand, Harrison argues that his Fifth Amendment privilege is not adequately protected by only prohibiting use of the compelled testimony on the issue of guilt. This issue is not, however, properly before us. The testimony was not used against Harrison in the Government's case in chief or for impeachment. Harrison cannot complain of the possibility that it might have been so used.[12]

## IV.

Harrison objects to a ruling by the trial judge allowing the admission of evidence concerning crimes not charged in the indictment. The evidence consisted of testimony by two persons who had cashed forged money orders for Harrison. The Government introduced the evidence to establish a pattern or system of conduct by the defendant as well as to prove the intent element of the offense charged. *See* United States v. Hatcher, 5 Cir. 1970, 423 F.2d 1086; United States v. Dryden, 5 Cir. 1970, 423 F.2d 1175; United States v. Restrepo, 5 Cir. 1969, 417 F.2d 927; Matthews v. United States, 5 Cir. 1969, 407 F.2d 1371. 2 Wright, Federal Practice & Procedure, § 410 (1969). The trial judge carefully instructed the jury as to the purpose for which the evidence was introduced and its limited relevance to proof of the crimes charged. We perceive no error.

11. Harrison seeks to distinguish *Simmons* since in that case the defendant was not "compelled" to give self-incriminating testimony, while in the present case the action of the trial judge represented unmistakable compulsion. We note, however, that the Court in *Simmons,* specifically rejected any suggestion that a defendant, forced to choose between one constitutional right and another, was not "compelled" to testify. *See* 390 U.S. at 393–394, 88 S.Ct. 967.

12. The district court may have prohibited use of the testimony for purposes of impeachment. The record is unclear. *See* footnote 8.

In addition, Harrison argues that the district court erred in refusing to allow him to introduce into evidence certain Jencks Act statements by one of the Government witnesses. *See* 18 U.S.C. § 3500. The witness testified at trial that she could identify Harrison as the person for whom she had cashed a money order. Defense counsel requested and received an earlier statement made by the witness to F.B.I. agents to the effect that she was unable to identify Harrison. Defense counsel used the statement for purposes of cross-examination but was precluded by the trial judge from introducing the statement into evidence. In the circumstances of this case, this ruling was not error. Although the Act governs the production of documents, it does not purport to modify the rules of evidence governing the admission and use of those documents. *See* Palermo v. United States, 1959, 360 U.S. 343, 79 S.Ct. 1217, 3 L.Ed.2d 1287; Campbell v. United States, 1963, 373 U.S. 487, 83 S.Ct. 1356, 10 L.Ed.2d 501; United States v. Calabrese, 6 Cir. 1970, 421 F.2d 108. Harrison did not have an absolute right to introduce the Jencks Act statement into evidence.

During the trial, the district court curtailed the cross-examination by defense counsel of a Government witness who testified that Harrison had made a statement to him. Our review of the record reveals no error in the trial judge's actions.

Finally, Harrison contends that two counts of the indictment should have been dismissed because the dates alleged in the indictment did not conform to those established at trial. Counts one and two alleged that the offenses occurred on or about October 14, 1970, and counts three and four alleged that the offenses occurred on or about October 12, 1970. The Government proved offenses occurred on October 16, 1970. We find no error. *See* Bradford v. United States, 5 Cir. 1969, 413 F.2d 467.

Affirmed.