**UNITED STATES of America,**
**Appellee,**

v.

**Henry David BLOOM, Appellant.**

**No. 72–1421.**

United States Court of Appeals,
Eighth Circuit.

Submitted Feb. 16, 1973.

Decided July 25, 1973.

Rehearing and Rehearing En Banc Denied
Aug. 20, 1973.

P. Terence Crebs, St. Louis, Mo., on brief for appellant.

Daniel Bartlett, Jr., U. S. Atty., Terry I. Adelman and David W. Harlan, Asst. U. S. Attys., St. Louis, Mo., on brief for appellee.

Before HEANEY and ROSS, Circuit Judges, and BENSON, Chief District Judge.

PER CURIAM.

Henry David Bloom appeals from a conviction, based upon a jury verdict, of violating the provisions of 18 U.S.C. §§ 1708 and 2315. Count I, of the two count indictment, charged unlawful possession of a credit card stolen from the United States mails, knowing the same to be stolen, 18 U.S.C. § 1708. Count II charged unlawful receipt and concealment of certain falsely made, forged and counterfeited securities, to-wit: four counterfeit American Express Travelers checks, which were moving as, or were a part of, interstate commerce, 18 U.S.C. § 2315. We affirm the judgment of conviction with regard to both charges.

### 18 U.S.C. § 1708

Bloom first argues that the district court erred in denying his motion for judgment of acquittal because the Government improperly relied upon an inference upon an inference in an attempt to establish that the credit card was stolen from the United States mail—an element that the Government must prove beyond a reasonable doubt.

Parenthetically, Bloom's attempt to phrase his argument in terms of the "inference upon an inference" analysis seems to be an attempt to avoid the invocation of the sufficiency of the evidence rule. Clearly when faced with a sufficiency of the evidence question

this Court is required to take the evidence in a light most favorable to the Government with all reasonable inferences which may be drawn therefrom. *See e. g.*, Glasser v. United States, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942); United States v. Matzker, 473 F.2d 408, 410 (8th Cir. 1973). Scholars are uniformly critical of the inference upon an inference analysis. *See e. g.*, 1 J. Wigmore, Wigmore on Evidence, § 41 at 434–435 (3 ed. 1940). Although this Court has applied such reasoning before, *see e. g.*, Brady v. United States, 24 F.2d 399, 403–404 (8th Cir.), cert. denied, 278 U.S. 603, 49 S.Ct. 10, 73 L.Ed. 531 (1928), the better reasoning would seem to suggest that the proper inquiry is whether the inference to be drawn turns on a fact regardless of whether such fact has been arrived at by direct or circumstantial evidence. *See e. g.*, Peterson v. United States, 411 F.2d 1074, 1077–1078 (8th Cir.), cert. denied, 396 U.S. 920, 90 S.Ct. 247, 24 L.Ed.2d 199 (1969). In any event, the evidence in this case was sufficient to allow the jury to find that the card had been stolen from the mails and the inferences from the facts proven were not so attenuated as to render the drawing of such inferences improper.

The evidence indicated that the credit card at issue was mailed on March 14, 1972. The name on the card was James P. Cullen, and it was placed in a mail bag with a "zip sort number" applicable to New York, New York. This evidence was derived from the testimony of the manager of accounts control for the American Express Company and was predicated upon records kept in the usual course of business. This testimony was highly probative evidence that the card had been mailed. *See e. g.*, Whiteside v. United States, 346 F.2d 500, 504 (8th Cir. 1965), cert. denied, 384 U.S. 1023, 86 S.Ct. 1946, 16 L.Ed.2d 1025 (1966).

Mr. James P. Cullen testified that although he expected a renewed American Express Credit Card in March of 1972, at his office in New York, New York, he did not receive the card. Expected receipt of mail, but non-receipt, is evidence which the jury might properly consider as bearing on the question of whether the card had been stolen from the mails. *See e. g.*, Whitehorn v. United States, 380 F.2d 909, 912 (8th Cir. 1967).

Joanne Warner testified that she was employed on April 8, 1972, at a motel in the St. Louis area when Bloom represented himself as being James P. Cullen, registered for a room, and indicated that he would pay by credit card. The credit card was the one at issue here. Mr. Cullen testified that the card bore his name and a forgery of his signature. The shortness of time between the mailing and the false use of Mr. Cullen's name on the credit card was competent evidence for the jury to consider in determining whether the card had been stolen from the mails. *See e. g.*, United States v. Halprin, 450 F.2d 322 (9th Cir. 1971), cert. denied, 405 U.S. 994, 92 S.Ct. 1267, 31 L.Ed.2d 462 (1972).

As Chief Judge Matthes has recently said:

"While it may be theoretically possible that the cards were stolen from the plant before mailing or from the funeral home after receipt, the prosecution need not affirmatively disprove every conceivable alternative theory. United States v. Mooney, 417 F.2d 936, 938 (8th Cir. 1969), cert. denied, 397 U.S. 1029, 90 S.Ct. 1280, 25 L.Ed. 2d 541 (1970); United States v. Zimple, 318 F.2d 676, 680 (7th Cir.), cert. denied, 375 U.S. 868, 84 S.Ct. 128, 11 L.Ed.2d 95 (1963). Where, as here, a letter containing a credit card was properly mailed and never received by the addressee but the card was found in quite improper and misusing hands it can be found that the card had been stolen from the mails in the absence of any other explanation being proffered. The jury need not grasp for improbable explanations, but may make common-sense inferences from the proven facts in both civil and

criminal cases. *See* United States v. Hines, *supra,* 256 F.2d 561 at 562 (2 Cir.). Since here the uncontroverted evidence clearly shows the addressee never received the card, and shows the card turned up in improper hands, the only arguable point is the sufficiency of the evidence proving the card was mailed. We think that evidence was sufficient." United States v. Matzker, *supra,* 473 F.2d at 411.

Second, Bloom objects to the following instruction:

"Possession of property recently stolen, if not satisfactorily explained, is a circumstance from which the jury may also reasonably draw the inference and find in the light of surrounding circumstances that the person in possession knew the property had been stolen.

. . . . . .

If you find from the evidence beyond a reasonable doubt that the American Express Credit Card described in the indictment was stolen, and that, while recently stolen, the credit card was in the possession of the accused, the jury would be justified in drawing from those facts the inference that the credit card was possessed by the accused with knowledge that the property was stolen, unless possession by the accused of the recently stolen property is explained to the satisfaction of the jury by other facts and circumstances in evidence."

Bloom argues that there was no direct evidence of mailing and no direct evidence of theft. From this premise Bloom argues that the above instruction improperly allowed the jury to infer that the card was mailed, was stolen, and was possessed with knowledge, simply on the basis that Bloom possessed the card. Thus, according to Bloom, the instruction allowed for an inference upon an inference upon an inference.

We note that the trial judge carefully pointed out the essential elements of the offense: stolen from the mails, unlawful possession, knowledge that the card was stolen.[1] The court emphasized that the burden of proof rested at all times with the Government and stressed that Bloom was not required to testify.

The instruction, commonly known as a "possession of recently stolen property" instruction, *see* 1 E. Devitt & C. Blackmar, Federal Jury Practice and Instructions, § 13.12 at 287–288 (1970), has explicitly or implicitly been approved by this Court in varying contexts. *See e. g.,* United States v. Sargis, 460 F.2d 1329, 1330 & n. 3 (8th Cir. 1972); United States v. Watson, 450 F.2d 290, 291 & n. 1 (8th Cir. 1971), cert. denied, 405 U.S. 993, 92 S.Ct. 1266, 31 L.Ed.2d 462 (1972); United States v. Brotherton, 427 F.2d 1286, 1288 (8th Cir. 1970); United States v. Jones, 418 F.2d 818, 820–821 & n. 2 (8th Cir. 1969); Anderson v. United States, 406 F.2d 529, 535 (8th Cir. 1969); Minor v. United States, 375 F.2d 170, 173 (8th Cir.), cert. denied, 389 U.S. 882, 88 S.Ct. 131, 19 L.Ed.2d 177 (1967); Lee v. United States, 363 F.2d 469, 474 (8th Cir.), cert. denied, 385 U.S. 947, 87 S.Ct. 323, 17 L.Ed.2d 227 (1966); Cloud v. United States, 361 F.2d 627, 629–630 (8th Cir. 1966).

The Supreme Court has recently considered such an instruction in a case very nearly identical to this one. In Barnes v. United States, *supra,* 412 U.S. 837, 93 S.Ct. 2357, 37 L.Ed.2d 380, the defendant was convicted on two counts of possessing United States Treasury checks stolen from the mails, knowing them to be stolen, two counts of forging the checks, and two counts of uttering the checks. The trial court instructed the jury that ordinarily it would be justified in inferring from unexplained possession of recently stolen mail that the defendant possessed the mail with knowl-

1. The recent opinion of the Supreme Court in Barnes v. United States, 412 U.S. 837, 93 S.Ct. 2357, 37 L.Ed.2d 380 (1973), makes clear that knowledge that the material was stolen *from the mails* is not an element of the crime.

edge that it was stolen. *Id.*, at 840 n. 3, 93 S.Ct. 2357 n. 3. In upholding the instruction the Court detailed an "impressive historical basis" for the instruction, and said:

"The evidence established that petitioner possessed recently stolen Treasury checks payable to persons he did not know, and it provided no plausible explanation for such possesson consistent with innocence. On the basis of this evidence alone common sense and experience tells us that petitioner must have known or been aware of the high probability that the checks were stolen. . . . Such evidence was clearly sufficient to enable the jury to find beyond a reasonable doubt that petitioner knew the checks were stolen. Since the inference thus satisfies the reasonable doubt standard, the most stringent standard the Court has applied in judging permissive criminal law inferences, we conclude that it satisfies the requirements of due process." *Id.* at 845, 93 S.Ct. at 2362.

As a consequence we must reject Bloom's argument that giving the instruction in this case was error.

### 18 U.S.C. § 2315

■ Bloom argues that the Government's proof relating to the interstate commerce requirement was insufficient. This contention is without merit. The Government established that:

1. The genuine travelers checks were issued on February 15, 1972, in Montreal, Canada;

2. Bloom cashed a counterfeit travelers check in New Orleans, Louisiana on March 30, 1972, which was very similar to one found in his possession when he was arrested.

3. Bloom cashed two other counterfeit travelers checks on April 3 and 4 of 1972, in Minneapolis, Minnesota, which were very similar to two of the checks found in his possession when arrested.

4. Bloom arrived in Missouri on April 8th, 1972, at about 12:30 p. m.

from Atlanta, Georgia by airplane and was arrested some eight hours later while in possession of the credit card described in the indictment, the travelers checks charged in the indictment, and some 73 cents in change.

■ Objection is made to the evidence regarding the Minnesota and Louisiana transactions with the assertion that such evidence has no probative value as to whether the checks described in the indictment were "moving as" interstate commerce. We disagree. Viewing this evidence in the light most favorable to the Government, it tended to prove a common scheme to pass counterfeit travelers checks throughout the country thus inferentially tending to establish a link between the travelers checks charged in the indictment and interstate commerce.

The Fifth Circuit, in a somewhat analogous case involving the alleged sale of counterfeit rare pennies, held both competent and relevant testimony that the defendant had in his possession counterfeit nickels during the same year in the same city. The evidence was said to be so related in character, time and place to the transfer of the pennies that it tended to support the conclusion that both acts were part of a common scheme. The Court also held that the evidence was relevant to the issue of intent and knowledge. United States v. Hatcher, 423 F.2d 1086, 1090 (5th Cir.), cert. denied, 400 U.S. 848, 91 S.Ct. 35, 27 L.Ed.2d 86 (1970). Consider also United States v. Harrison, 461 F.2d 1127, 1132 (5th Cir.), cert. denied, 409 U.S. 884, 93 S.Ct. 174, 34 L.Ed.2d 140 (1972). In *Harrison* the Court held admissible evidence consisting of testimony of two persons who had cashed forged money orders for the defendant, other than the forged money orders charged in the indictment. The Court said, "The Government introduced the evidence to establish a pattern or system of conduct by the defendant as well as to prove the intent element of the offense charged." *Id.* at 1132.

*Hatcher* and *Harrison* indicate that evidence of similar acts may be presented when they are so blended with the act at issue that proof of the related act explains and tends logically to prove an element of the crime charged. *See generally* United States v. Cochran, 475 F.2d 1080, 1082 (8th Cir. 1973); United States v . Lewis, 423 F.2d 457, 459 (8th Cir.), cert. denied, 400 U.S. 905, 91 S.Ct. 146, 27 L.Ed.2d 142 (1970); Tucker v. United States, 375 F.2d 363, 371 n. 9 (8th Cir.), cert. denied, 389 U.S. 888, 88 S.Ct. 128, 19 L. Ed.2d 189 (1967). To say that there was no proof that the travelers checks charged in the indictment were moving as interstate commerce, in the face of evidence demonstrating a nationwide check passing scheme, conducted by the defendant and closely related in time and character, disregards reality.

■ Bloom also argues that the trial judge instructed the jury that they could not consider the Louisiana and Minnesota transactions unless they first found from other evidence that Bloom did the acts charged in the indictment. As a consequence Bloom argues that the evidence was insufficient to support the interstate commerce proof requirement because the jury first had to find such an interstate commerce link without considering the Louisiana and Minnesota acts. But, as Bloom indicates in his brief, the instruction referred to related to *intent* and the use of acts of like nature to prove intent. Indeed a pattern instruction very nearly identical to the one used at trial is entitled "Evidence of Intent— Earlier Act of Like Nature". 1 E. Devitt and C. Blackmar, Federal Jury Practice and Instructions, § 13.08 at 281 (1970). The Assistant United States Attorney argued that the Minnesota and Louisiana transactions were introduced for two purposes: to prove a common scheme and to prove intent. Clearly such evidence may be introduced for those two purposes. *See e. g.,* United States v. Harrison, *supra,* 461 F.2d at 1132; United States v. Hatcher, *supra,* 423 F.2d at 1090. As a consequence we

do not believe that the intent instruction was meant to preclude the jury from considering the Louisiana and Minnesota transactions as direct evidence of interstate commerce involvement.

For the reasons hereinbefore expressed the judgment of conviction is affirmed.