[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 31, 2007
THOMAS K. KAHN
CLERK

_____

No. 05-16778

_____

D. C. Docket No. 97-00076-CR-4-RH-WCS

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

TERRY LEE PRESLEY,

Defendant-Appellant.

_____

No. 05-16779

_____

D. C. Docket No. 05-00011-CR-4-RH-WCS

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

TERRY LEE PRESLEY,

Defendant-Appellant.

Appeals from the United States District Court
for the Northern District of Florida

**(May 31, 2007)**

Before CARNES, WILSON and HILL, Circuit Judges.

CARNES, Circuit Judge:

Terry Lee Presley brings us two appeals, which we have consolidated.  In the first one he appeals the revocation of his supervised release.  He contends that under 18 U.S.C. § 3583(i) the district court lacked jurisdiction to revoke his release after the term of it was over, because the allegations behind the warrant and the summons that were issued to begin the revocation proceeding were not sworn.  In the other appeal, Presley challenges his conviction on one count of possessing a firearm as a convicted felon in violation of 18 U.S.C. §§ 921(g)(1), 924(a)(2); he complains about the district court not telling the jury that it could acquit him if his possession of the firearm was necessary.

## I.

In 1998 Presley pleaded guilty to conspiring to possess marijuana with intent to distribute and was sentenced to a twenty-four-month prison term to be followed by a three-year period of supervised release. After completing his prison time and starting the release period, Presley admitted in June of 2002 to three violations of his supervised release conditions, which included testing positive for marijuana. As a result of those violations, the district court sentenced him to an additional month in prison and a new term of supervised release that was scheduled to end on June 27, 2003.

Presley did not make it through his new term of supervised release any better than he did the first one. On May 7, 2003, his probation officer petitioned the district court for a summons ordering Presley to appear before the court and answer her allegations that he had violated the conditions of his new release by again testing positive for marijuana use. The district court granted that petition, and a summons issued on May 27, 2003. Then, on the same day the summons was issued, Presley's probation officer filed a petition alleging three more supervised release violations, each relating to Presley's May 15, 2003 arrest by the Florida State University Police Department for resisting arrest, possessing cocaine and marijuana with the intent to sell, and a few other things. This time, though, the

probation officer asked the district court to issue a warrant for Presley's arrest instead of a summons. The district court granted the petition and an arrest warrant issued on June 2, 2003.

The summons and the warrant were each aimed at getting Presley back before the district court for a supervised release hearing. Both were issued before Presley's term of supervised release was over, but neither was served on him before its expiration date. And, critical to framing the issues raised in this appeal, both were based on allegations by the parole officer that were not sworn.

Presley's supervised release revocation hearing was conducted in conjunction with the sentence hearing that followed his conviction on the felon-in-possession charge that forms the basis for the second half of this consolidated appeal. It took place on November 29, 2005. After hearing evidence about the alleged violations, the district court found Presley guilty of the single violation set out in the summons and of two of the three in the warrant. The court revoked the term of supervised release that otherwise had ended on June 27, 2003, and it sentenced him to eighteen months imprisonment.

Before revoking Presley's term of release and sentencing him, the court raised the issue of whether it had jurisdiction to proceed with the revocation. It pointed to the decision in United States v. Vargas-Amaya, 389 F.3d 901 (9th Cir.

2004), which had interpreted 18 U.S.C. § 3583(i) to mean that any warrant providing a court with jurisdiction to revoke supervised release after the end of it must be "based on sworn facts." Id. at 907. After hearing from the parties on the issue, the district court disagreed with the Ninth Circuit's Vargas-Amaya decision. The court concluded that under § 3583(i) the summons gave it jurisdiction to consider the charge set out in that document, and the warrant gave it jurisdiction to consider the three charges set out in that document, even though neither document had been based on sworn allegations.

The sole issue Presley raises about the revocation is whether the district court had jurisdiction to do it, a matter we review de novo. See United States v. Najjar, 283 F.3d 1306, 1307 (11th Cir. 2002) (per curiam). The governing statute provides:

> The power of the court to revoke a term of supervised release for violation of a condition of supervised release . . . extends beyond the expiration of the term of supervised release for any period reasonably necessary for the adjudication of matters arising before its expiration if, before its expiration, a warrant or summons has been issued on the basis of an allegation of such a violation.

18 U.S.C. § 3583(i) (emphasis added).

Presley contends that in the § 3583(i) reach back provision the words "issued on the basis of an allegation of such a violation" mean that the warrant or

summons must be based not just on "an allegation of such a violation," as the statute says but on a sworn allegation. He wraps that proposition in the Fourth Amendment's Warrant Clause, see U.S. Const. Amend. IV ("no Warrants shall issue, but upon probable cause, supported by Oath or affirmation . . . ."), and the Vargas-Amaya decision, in which the Ninth Circuit agreed that "the plain meaning of the term 'warrant' [in § 3583(i)] means a document . . . based upon probable cause and supported by sworn facts." Id. at 904. The government, in response, cites the Fifth Circuit's decision in United States v. Garcia-Avalino, 444 F.3d 444 (5th Cir.), cert. denied, ___ U.S. ___, 127 S. Ct. 141 (2006), which rejected the Ninth Circuit's position and instead held that "a warrant for the arrest of a supervised releasee need not comply with the Oath or affirmation clause of the Fourth Amendment." Id. at 447.

The split between the Fifth and Ninth Circuits over the revocation warrant issue is interesting, but their disagreement does not extend to the question of whether under the reach back provision a summons, as distinguished from a warrant, must be based on allegations made under oath or affirmation. The Ninth Circuit "express[ed] no opinion" on the summons question, Vargas-Amaya, 389 F.3d at 906 n.4, and the Fifth Circuit's reasoning on the warrant issue makes it clear that it would also hold that allegations bringing forth a summons need not be

6

sworn. No decisions we have seen hold that for § 3583(i) purposes a summons must be based on sworn allegations. The Fourth Amendment, of course, says nothing about haling someone into court with a summons, instead of taking them into custody with a warrant. Nor is there anything in the statute itself or inherent in the word "summons" that requires sworn statements for one to issue.

Presley argues that various provisions in the federal criminal procedure rules specify: (1) that a "summons" may be issued in lieu of a warrant, if supported by a complaint or affidavits establishing probable cause, Fed. R. Crim. P. 4(a); (2) that all complaints must be "made under oath," Fed. R. Crim. P. 3; and (3) that a summons must be made "in the same form as a warrant except that it must require the defendant to appear before a magistrate judge at a stated time and place," Fed. R. Crim. P. 4(b)(2). These rules, he adds, are "constitutionally compelled."

We do not think that they are. There is nothing in the Constitution, which does not even mention summonses, that requires one to be based on sworn allegations. As for the criminal rules provisions that Presley relies on, they are concerned with haling into court a citizen whose liberty is otherwise unrestrained. What's missing from Presley's argument is an appreciation of the custody status of one on supervised release.

7

Requirements contained in the Federal Rules of Criminal Procedure that impose procedures for taking someone into custody do not necessarily apply to people who, like Presley, are under court supervision as part of a criminal sentence.  See United States v. Harrison, 461 F.2d 1127, 1130 (5th Cir. 1972).[1] The reason they do not is that a convicted criminal on parole, as in Harrison, or one who is on supervised release, as in this case, is already in "constructive custody."  Id.; see also United States v. Brown, 117 F.3d 471, 475 (11th Cir. 1997) (concluding that a "supervised releasee" is "in custody" for purposes of filing a federal habeas petition under 28 U.S.C. § 2255).  As a result, a summons issued to a convicted criminal on supervised release, a form of custody, is not the same as a summons issued to a citizen who is free of restrictions on his liberty and not in any type of custody.  See Harrison, 461 F.2d at 1130 ("[A] parole violator is not technically 'arrested' as Rule 5(a) contemplates.  Rather, . . . when arrested under a parole violator warrant, he is merely placed in actual custody . . . .").  It is not the same because the step from constructive custody to actual custody is shorter than the leap from unsupervised freedom to actual custody.

If Congress had wanted, it easily could have said that for purposes of

---

[1] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), the Eleventh Circuit adopted as binding precedent all Fifth Circuit decisions handed down prior to the close of business on September 30, 1981.

supplying reach back jurisdiction under § 3583(i) a summons must be supported by sworn facts. It didn't say that. Instead, Congress wrote the statute so that the only question is whether, before the expiration of Presley's release period, a summons "has been issued on the basis of an allegation of such a violation" before the term of supervised release expired. 18 U.S.C. § 3583(i). Here, the answer to that question is yes. The summons was issued on May 27, 2003, and the period of supervised release was not scheduled to end until a month later. The requirements of the statute were met, giving the district court jurisdiction to revoke Presley's supervision even after the period of it had ended.

Although the district court did find Presley guilty of the violation specified in the summons, its authority to determine if his supervised release should be revoked was not confined to the specifications of the summons. Instead, once Presley was before the court it had the power to consider any violation of the terms of the release and base a revocation on it. See § 3583(i) (conferring reach back jurisdiction "for any period reasonably necessary for the adjudication of <u>matters arising before its expiration</u>" (emphasis added)); <u>see also</u> <u>United States v. Naranjo</u>, 259 F.3d 379, 383 (5th Cir. 2001) ("[Section 3583(i)'s] plain language permits revocation based on <u>any</u> violation of a condition of supervised release occurring during the supervision term, even if <u>not</u> contained in a petition for revocation filed

9

during that term, <u>so long as</u> a warrant or summons was issued during that term on the basis of <u>an alleged violation</u>.").  In other words, once the summons gave it jurisdiction to decide whether to revoke Presley's release, the court also could consider the specifications contained in the warrant.  § 3583(i).  The defendant must, of course, be given notice but Presley does not suggest that he lacked notice of the charges.

For these reasons, we will affirm the district court's revocation of Presley's term of supervised release.

## II.

In Presley's appeal from his felon-in-possession charge, he contends that the district court erroneously refused to instruct the jury on the elements of his necessity defense.  We have said that a defendant is entitled to have the court instruct the jury on his theory of the case, "as long as it has some basis in the evidence and has legal support."  <u>United States v. Nolan</u>, 223 F.3d 1311, 1314 (11th Cir. 2000) (per curiam) (citing <u>United States v. Grigsby</u>, 111 F.3d 806, 814 (11th Cir. 1997)).

We agree with the district court that Presley was not entitled to the necessity instruction.  His story is that he found his nephew and some other children in the neighborhood playing with the firearm he was later charged with possessing, and

10

that taking the gun was necessary to protect them. Then, he says, he walked up the street to his mother's trailer home, which was five minutes away, and hid the gun under her house before being arrested about thirty minutes later. Presley admitted that he was carrying not one but two cell phones that day, which means that he had not one but two ways of calling law enforcement or some other responsible party to take possession of the firearm. Presley, therefore, had at least one reasonable alternative to possessing the gun himself, and the necessity defense would not apply unless he had none. See United States v. Deleveaux, 205 F.3d 1292, 1297 (11th Cir. 2000) (setting out the elements of a necessity defense, including "that the defendant had no reasonable legal alternative to violating the law"). Accepting his story as true, the necessity defense could not apply and the district court was not required to tell the jury otherwise.

## III.

The district court's order revoking Presley's supervised release in No. 05-16778 is **AFFIRMED**, and the judgment embodying his conviction in No. 05-16779 is also **AFFIRMED**.