# United States Court of Appeals
## For the First Circuit

No. 10-1760

UNITED STATES OF AMERICA,

Appellee,

v.

MIGDALIA COLLAZO-CASTRO,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Carmen C. Cerezo, U.S. District Judge]

Before

Torruella, Thompson, Circuit Judges,

and Saris,* District Judge.

Thomas J. Trebilcock-Horan, Research and Writing Specialist, with whom Héctor E. Guzmán-Silva, Federal Public Defender, and Héctor L. Ramos-Vega, Assistant Federal Public Defender, were on brief, for appellant.
Carlos R. Cardona-Torres, Assistant United States Attorney, with whom Rosa Emilia Rodríguez-Vélez, United States Attorney, Nelson Pérez-Sosa, Assistant United States Attorney, Chief, Appellate Division, and Luke Cass, Assistant United States Attorney, were on the brief, for appellee.

September 29, 2011

---

*Of the District of Massachusetts, sitting by designation.

**SARIS, District Judge.** Migdalia Collazo-Castro ("Collazo-Castro") appeals the revocation of her supervised release on the ground that the district court lacked jurisdiction under 18 U.S.C. § 3583(i), the Delayed Revocation Statute, because the warrant on which she was arrested did not comply with the oath or affirmation clause of the Fourth Amendment.

Rejecting this contention, we AFFIRM the judgment of the district court.

## BACKGROUND[1]

Collazo-Castro pled guilty to one count of conspiracy to smuggle illegal aliens into the United States in violation of 8 U.S.C. §§ 1324(a)(1)(A)(i), (v)(I). On December 7, 2004, Collazo-Castro was sentenced to twelve months and one day of imprisonment, followed by a three-year term of supervised release. Her term of supervised release began on February 11, 2005, and was set to run until February 11, 2008.

On April 26, 2005, Collazo-Castro's probation officer filed a Motion Notifying Violations of Supervised Release Conditions, stating that Collazo-Castro had tested positive twice for cocaine use, and had admitted to using crack cocaine. The probation officer requested that the district court issue Collazo-Castro a written reprimand warning her that any further violations

---

[1] We have jurisdiction over Collazo-Castro's appeal pursuant to 28 U.S.C. § 1291.

-2-

would require her to appear in court and show cause why her supervised release term should not be revoked. The district court never acted on this motion, but Collazo-Castro did agree, pursuant to a referral by the probation officer, to enter a residential treatment and drug counseling program on April 11, 2005.

On May 11, 2005, Collazo-Castro's probation officer presented an "official report upon the conduct and attitude of the offender" and filed a Motion for Revocation of Supervised Release Term and Request for a Warrant, alleging that she had (1) abandoned her drug treatment program on May 7, 2005; and (2) failed to report after abandoning treatment. The motion was sent to the government and to defense counsel. The allegations of the violation of supervised release were not made under oath, but the motion was signed by the probation officer. On May 19, 2005, the district court issued an arrest warrant. The federal public defender entered an appearance on Collazo-Castro's behalf. On May 23, 2005, a hearing on the order to show cause took place before the magistrate judge with defense counsel and a probation officer present. Collazo-Castro did not appear, and the court continued the hearing until the defendant was arrested. On November 17, 2005, the magistrate judge to whom the motion had been referred issued an order stating that the arrest warrant remained pending and that a show cause hearing would be set upon Collazo-Castro's arrest.

After an unexplained four-year delay[2], Collazo-Castro was arrested on October 8, 2009. On October 14, 2009, a preliminary revocation hearing was held before a magistrate judge, who found probable cause based on the probation officer's testimony. At the hearing, Collazo-Castro's attorney argued that the district court lacked jurisdiction to revoke her term of supervised release and requested that the matter be dismissed given that the government took no steps to arrest Collazo-Castro for over four years. The magistrate judge referred the tolling issue to the district court for a full revocation hearing and noted that defense counsel had reserved the right to raise the jurisdictional claim.

On October 28, 2009, Collazo-Castro filed a "Motion to Dismiss Revocation Proceedings," contending that the original arrest warrant was invalid under the Delayed Revocation Statute because it was not based on a finding of probable cause supported by a statement made under oath or affirmation. The district court initially denied defendant's motion without addressing the Warrant Clause argument, finding that defendant's term of supervised release was tolled while she was a fugitive under the doctrine of fugitive tolling. After this Court rejected the doctrine of fugitive tolling in United States v. Hernandez-Ferrer, 599 F.3d 63, 69 (1st Cir. 2010), Collazo-Castro moved for reconsideration of the

---

[2] The record does not explain why the delay was so long, but there is reference to a sealed pleading by the U.S. Marshal.

-4-

district court's order denying the motion to dismiss.  The district court issued an order on April 23, 2010, finding that Collazo-Castro's fugitive status did not toll her term of fugitive release, but concluding in any event that the motion to dismiss was properly denied on other grounds:

> Having considered the various arguments on this issue, the Court believes that the position adopted by the Fifth Circuit in [United States v. Garcia-Avalino, 444 F.3d 444 (5th Cir. 2006)] that the warrant for the arrest of a supervised releasee need not comply with the Oath or affirmation clause of the Fourth Amendment, later followed by the Eleventh and Fourth Circuits, is the more logical.  To the reasons aptly explained by the Fifth Circuit in adopting said position we simply add but one: a warrant for the arrest of a releasee may be triggered by ordinary violations to standard conditions of release, as often happens with occurrences as nonchalant as failing to submit a required monthly report, or a failure to inform of change of address.  It seems to us that such situations should not require the heightened sworn-facts crucible of the Warrant Clause, especially when the arrest warrants are requested by the supervising U.S. Probation Officers.  (Cf. Fed. R. Crim. P. 4(a), which requires a warrant supported by Oath or affirmation for the arrest of a person against whom there is probable cause of having committed a criminal offense.)  Given those circumstances, we are not persuaded that the term "warrant" as used in 18 U.S.C. § 3583(i) implicitly includes a sworn-facts requirement as interpreted by the Ninth Circuit in [United States v. Vargas-Amaya, 389 F.3d 901 (9th Cir. 2004)].

United States v. Nevarez-Ortega, 709 F. Supp. 2d 123, 124-25 (D.P.R. 2010).

-5-

On May 5, 2010, the district court revoked Collazo-Castro's term of supervised release and sentenced her to time served and an additional twenty-six month term of supervised release. This timely appeal followed.

**STANDARD OF REVIEW**

Whether a district court has legal jurisdiction to revoke a term of supervised release is a question of law and engenders de novo review. Hernandez-Ferrer, 599 F.3d at 65.

**DISCUSSION**

A.      **Meaning of "Warrant"**

The central dispute is whether the district court had relation-back jurisdiction under the Delayed Revocation Statute, which provides:

> The power of the court to revoke a term of supervised release for violation of a condition of supervised release, and to order the defendant to serve a term of imprisonment and, subject to the limitations in subsection (h), a further term of supervised release, extends beyond the expiration of the term of supervised release for any period reasonably necessary for the adjudication of matters arising before its expiration if, before its expiration, a warrant or summons has been issued on the basis of an allegation of such a violation.

18 U.S.C. § 3583(i) (emphasis added). "While section 3583 extends the jurisdiction of a court to hold revocation hearings after the term of supervised release has expired, [18 U.S.C. § 3606] actually governs the issuance of warrants for the arrest of probationers or

-6-

supervised releasees." Garcia-Avalino, 444 F.3d at 446 n.3; see also Vargas-Amaya, 389 F.3d at 906 (same). Section 3606 provides:

> If there is probable cause to believe that a probationer or a person on supervised release has violated a condition of his probation or release, he may be arrested, and, upon arrest, shall be taken without unnecessary delay before the court having jurisdiction over him. A probation officer may make such an arrest wherever the probationer or releasee is found, and may make the arrest without a warrant. The court having supervision of the probationer or releasee, or, if there is no such court, the court last having supervision of the probationer or releasee, may issue a warrant for the arrest of a probationer or releasee for violation of a condition of release, and a probation officer or United States marshal may execute the warrant in the district in which the warrant was issued or in any district in which the probationer or releasee is found.

18 U.S.C. § 3606. Sections 3606 and 3583 were enacted in 1984 as part of the Sentencing Reform Act package that transformed the federal parole system into a supervised release system. "Under the Sentencing Reform Act's provisions for supervised release, the sentencing court, rather than the Parole Commission, would oversee the defendant's postconfinement monitoring." Gozlon-Peretz v. United States, 498 U.S. 395, 400-01 (1991).

Appellant argues that in the absence of a statutory definition of "warrant," this Court should apply the word's ordinary meaning, which, in her view, is the definition in the Warrant Clause of the Fourth Amendment. The Fourth Amendment provides that "no Warrants shall issue, but upon probable cause,

supported by Oath or affirmation." U.S. Const. amend. IV. If the term "warrant" in sections 3606 and 3583(i) is defined to require sworn facts, the district court did not have jurisdiction to revoke appellant's supervision.

Two circuit courts have split on this precise issue. The Ninth Circuit held that the term "warrant" requires an oath or affirmation both as a matter of statutory interpretation and to avoid an interpretation inconsistent with the Constitution. See Vargas-Amaya, 389 F.3d at 904, 906. The Fifth Circuit came to the opposite conclusion. See Garcia-Avalino, 444 F.3d at 447. We agree with the Fifth Circuit.[3]

### 1.    Delayed Revocation Statute

"The starting point in interpreting a statute is its language, for '[i]f the intent of Congress is clear, that is the end of the matter.'" Good Samaritan Hosp. v. Shalala, 508 U.S. 402, 409 (1993) (quoting Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 842 (1984)). As we recently recited,

> [u]nder settled principles of statutory construction, we first look to whether the statutory text is plain and unambiguous . . . . In conducting this analysis, we begin with the ordinary meaning of the terms as of the time when the statutory provision was enacted.

---

[3] Two other courts of appeal have alluded to the split between the Fifth and Ninth Circuits, but neither took a position. See United States v. Brennan, 285 F. App'x 51, 56 (4th Cir. 2008); United States v. Presley, 487 F.3d 1346, 1348 (11th Cir. 2007).

> To determine ordinary meaning, we may consult
> dictionary definitions, interpretations given
> to the same terms by judicial construction,
> and the statutory context in which the words
> are used.

Hernandez-Miranda v. Empresas Diaz Masso, Inc., No. 10-1639, 2011 WL 2557012, at *3 (1st Cir. June 29, 2011) (internal citations omitted).

The standard dictionary definition of the term "warrant" does not include a requirement that a warrant be supported by an oath or affirmation. Black's Law Dictionary defines "warrant" as a "writ directing or authorizing someone to do an act, esp. one directing a law enforcer to make an arrest, a search, or a seizure." Black's Law Dictionary 1722 (9th ed. 2009). In addition, Black's Law Dictionary defines an "arrest warrant" as a "warrant, issued only on probable cause, directing a law-enforcement officer to arrest and bring a person to court." Id. The Random House Dictionary defines "warrant" as "an instrument, issued by a magistrate, authorizing an officer to make an arrest, seize property, make a search, or execute a judgment." The Random House Dictionary of the English Language 2144 (2d ed. unabr. 1987). The Oxford English Dictionary defines "warrant" as a "writing issued by the sovereign, an officer of state, or an administrative body, authorizing those to whom it is addressed to perform some act." 19 Oxford English Dictionary 929 (2d ed. 1989). The Oxford English Dictionary's language was exactly the same in 1971 and thus

-9-

likely served as the definitional backdrop to Congress's 1984 passage of the Sentencing Reform Act. <u>See</u> Oxford English Dictionary 3691 (Compact ed. 1971).

Collazo-Castro argues that "warrant" is a "term of art," which must be imbued with the interpretation given in the Constitution. In concluding that the term "warrant" means "a document that is based upon probable cause and supported by sworn facts," the Ninth Circuit reasoned that "[i]t is a well-established canon of statutory construction that when Congress uses a term of art, such as 'warrant,' unless Congress affirmatively indicates otherwise, we presume Congress intended to incorporate the common definition of that term . . . ." <u>Vargas-Amaya</u>, 389 F.3d at 904. <u>See generally</u> <u>Morrissette</u> v. <u>United States</u>, 342 U.S. 246, 263 (1952) ("[W]here Congress borrows terms of art in which are accumulated the legal tradition and meaning of centuries of practice, it presumably knows and adopts the cluster of ideas that were attached to each borrowed word in the body of learning from which it was taken and the meaning its use will convey to the judicial mind unless otherwise instructed."). The Ninth Circuit noted that section 3606's inclusion of probable cause "[b]y extension" required an oath or affirmation. <u>Vargas-Amaya</u>, 389 F.3d at 905 n.2 ("By extension, if Congress intended to incorporate the 'probable cause' portion of the Warrant Clause in each statute, it

must have also intended to incorporate the 'Oath or affirmation' portion of the Clause.").

The government responds that the term "warrant" is not a term of art in the context of persons under the supervision of the court (i.e. on pretrial release, probation, or supervised release) where a warrant supported by oath or affirmation has not consistently been required for violations of terms of release. As the Fifth Circuit pointed out, explicit oath or affirmation requirements, such as those in the Fourth Amendment and the Federal Rules of Criminal Procedure, are "not proof that there is an implicit sworn-facts requirement embedded in the very meaning of the word 'warrant' as a legal term. If anything, such examples suggest the converse, i.e. that a valid warrant need not be supported by sworn facts unless a specific statutory provision requires such support." Garcia-Avalino, 444 F.3d at 445. As examples, the Fifth Circuit pointed to Federal Rules of Criminal Procedure 4 and 9, which have explicit oath requirements. See id. Rule 4(a) provides that an arrest warrant may issue only "[i]f the complaint or one or more affidavits filed with the complaint establish probable cause to believe that an offense has been committed and that the defendant committed it." Fed R. Crim. P. 4(a). See also Fed. R. Crim. P. 3 (explaining that a complaint "must be made under oath"); Black's Law Dictionary 66 (9th ed. 2009) (defining "affidavit" as a "sworn" declaration of facts).

Similarly, Rule 9 provides that an arrest warrant may issue "if one or more affidavits accompanying the information establish probable cause." Fed R. Crim. P. 9(a). The Advisory Committee Notes to Rule 9 explain that "[t]he provision of rule 9(a) that a warrant may be issued on the basis of an information only if the latter is supported by oath is necessitated by the Fourth Amendment to the Constitution of the United States." Fed. R. Crim. P. 9 advisory committee's note to 1944 Adoption. In contrast, in the case of a criminal defendant who is on pretrial release pending trial, there is no sworn facts requirement. Rather, an "attorney for the Government may initiate a proceeding for revocation of an order of release by filing a <u>motion</u> with the district court. A judicial officer may issue a warrant for the arrest of a person charged with violating a condition of release." 18 U.S.C. § 3148(b) (emphasis added).

Significantly, prior to the advent of supervised release, administrative warrants to revoke a prisoner on parole did not require sworn facts. The governing statute under the parole regime provided that a "warden, at any time within the term or terms of the prisoner's sentence, may issue his warrant to any officer hereinafter authorized to execute the same for the retaking of such prisoner." 18 U.S.C. § 717 (1946); Act of June 25, 1910, ch. 387, § 4, 36 Stat. 820 (original enactment); Act of May 13, 1930, ch. 255, § 1, 46 Stat. 272 (amendment). In a case where a parolee

-12-

challenged an arrest warrant that was not under oath, the D.C. Circuit held:

> Appellant completely misconstrues the nature and purpose of the laws governing parole and conditional releases. A warrant issued for the retaking of a person under these laws proceeds upon an entirely different premise and serves a different purpose than in the case of a warrant for the arrest of a person charged with the commission of a crime. A released prisoner is not a free man. Prior to the expiration of his maximum term he is a ward of the Parole Board, subject to its control and care. The Supreme Court has characterized the violation of a condition of parole as being, in legal effect, on the same plane as an escape from the custody of the warden. "His status and rights were analogous to those of an escaped convict." Anderson v. Corall, 263 U.S. 193, [196 (1923)]. Consequently, it cannot be said that the retaking of a prisoner who is already within the legal custody of the authorities constitutes an arrest within the meaning of the constitutional provisions. Nor need the warrant be under oath, for the same reasons.

Story v. Rives, 97 F.2d 182, 188 (D.C. Cir. 1938) (citing Jarman v. United States, 92 F.2d 309, 311 (4th Cir. 1937) (observing that "the warrant in question was not a warrant for the arrest of one to be charged with and tried for a crime, nor for search and seizure of property, as contemplated in the Fourth Amendment to the Constitution")). While this case law is old, courts have continued to hold that the "[r]equirements contained in the Federal Rules of Criminal Procedure that impose procedures for taking someone into custody do not necessarily apply to people who . . . are under court supervision as part of a criminal sentence." Presley, 487

-13-

F.3d at 1349 (citing <u>United States</u> v. <u>Harrison</u>, 461 F.2d 1127, 1130 (5th Cir. 1972)).  They have explained that the reason these rules for taking someone into custody do not necessarily apply is that a convicted criminal on supervised release (or parole) is already in "constructive custody."  <u>See id.</u>; <u>see also</u> <u>Harrison</u>, 461 F.2d at 1130; <u>cf.</u> <u>United States</u> v. <u>Brown</u>, 117 F.3d 471, 475 (11th Cir. 1997) (concluding that a supervised releasee is "in custody" within the meaning of 18 U.S.C. § 2255).

Because Congress is presumed to have known that the parole statute had no oath requirement, its failure to engraft such a requirement onto section 3606 speaks volumes.  <u>See</u> <u>United States</u> v. <u>Hanousek</u>, 176 F.3d 1116, 1121 (9th Cir. 1999) ("Congress is presumed to have known of its former legislation and to have passed new laws in view of the provisions of the legislation already enacted."); <u>see also</u> <u>St. Louis, I.M. & S. Ry. Co.</u> v. <u>United States</u>, 251 U.S. 198, 207 (1920) ("Congress must be presumed to have known of its former legislation . . . ."); <u>cf.</u> <u>United States</u> v. <u>Dyer</u>, 589 F.3d 520, 527 n.6 (1st Cir. 2009) (stating that "we consider the legislative history and the congressional findings of prior iterations of the Act relevant to its present meaning").

In light of this legislative history, the failure to include an oath or affirmation requirement in section 3606 and the inclusion of a probable cause requirement demonstrates congressional intent not to require sworn facts.

**B.**         **<u>Fourth Amendment Protections for Supervised Releasees</u>**

Even if the statute does not require a warrant based on sworn facts, appellant argues that the warrant did not comply with the sworn facts requirement of the Fourth Amendment.

The Supreme Court has held "that a parolee is not entitled to 'the full panoply' of due process rights to which a criminal defendant is entitled." <u>Pa. Bd. of Prob. & Parole</u> v. <u>Scott</u>, 524 U.S. 357, 365 n.5 (1998) (quoting <u>Morrissey</u> v. <u>Brewer</u>, 408 U.S. 471, 480 (1972)). "[T]he revocation of parole is not part of a criminal prosecution and thus the full panoply of rights due a defendant in such a proceeding does not apply to parole revocations." <u>Morrissey</u>, 408 U.S. at 480; <u>see also</u> <u>Gagnon</u> v. <u>Scarpelli</u>, 411 U.S. 778, 781-82 (1973) (finding that parole revocation is not a stage of criminal prosecution even if it results in a loss of liberty). The <u>Morrissey</u> Court explained that "[b]y whatever name, the [parolee's] liberty is valuable and must be seen as within the protection of the Fourteenth Amendment. Its termination calls for some orderly process, however <u>informal</u>." 408 U.S. at 482 (emphasis added).

The Fifth and Ninth Circuits disagree on the constitutional requirements of arrest warrants issued for supervised releasees. The Ninth Circuit has held that "an ordinary judicial warrant that is statutorily required for the arrest of a

-15-

person on supervised release must comply with the Warrant Clause of the Fourth Amendment in order to extend the court's jurisdiction under § 3583(i)." Sherman v. U.S. Parole Comm'n, 502 F.3d 869, 884-85 (9th Cir. 2007) (citing Vargas-Amaya, 389 F.3d at 907 & n.5). The Fifth Circuit rejected the argument that a sworn facts requirement must be read into the term "warrant" to avoid interpreting section 3583(i) in a way that would render it unconstitutional. Garcia-Avalino, 444 F.3d at 446-47.

We conclude that the Fourth Amendment does not require a warrant based on an oath or affirmation to revoke an individual on supervised release. "An oath or affirmation 'is designed to ensure that the truth will be told by insuring that the witness or affiant will be impressed with the solemnity and importance of his words.'" United States v. Brooks, 285 F.3d 1102, 1105 (8th Cir. 2002) (quoting United States v. Turner, 558 F.2d 46, 50 (2d Cir. 1977)). Probation officers, who notify district courts of alleged violations, are supervised by the courts. See United States v. York, 357 F.3d 14, 22 n.6 (1st Cir. 2004). Because probation officers "function as an 'arm of the court'" they possess a unique role that does not require the same safeguards imposed on ordinary affiants by the Fourth Amendment. Id. (quoting United States v. Saxena, 229 F.3d 1, 5 n.1 (1st Cir. 2000)). Because a probation officer's credibility is typically known by the district court, and because she is an officer of the court, an oath or affirmation is

not required either to ensure credibility or to impress the officer with the consequences of failing to tell the truth.  While it is now considered a best practice[4] to seek a revocation warrant based on sworn facts, an oath or affirmation request is not constitutionally mandated.  Because the warrant was valid, the district court had jurisdiction to revoke the appellant.

The judgment of the district court is hereby <u>AFFIRMED</u>.

---

[4] Indeed, the form currently used by probation officers in petitioning for a warrant to arrest a supervised releasee, although not used in this case, is called a "Petition for Warrant or Summons for Offender Under Supervision."  The form has a space for the parole officer to sign, accompanied by the language "I declare under penalty of perjury that the foregoing is true and correct."  Form PROB-12C.  Appellant suggests that probation officers in Puerto Rico are now using the recommended language.